**Timothy Von Eric GARNER, Sr., Appellant**

v.

**Ayesha Y. GARNER, Appellee.**

No. 05–04–01802–CV.

Court of Appeals of Texas, Dallas.

Aug. 18, 2006.

Mellannise Evette Henderson, Law Office of Mellannise Henderson-Love, P.C., Dallas, for Appellant.

Georganna L. Simpson, Law Offices of Georganna L. Simpson, Dallas, for Appellee.

Before Chief Justice THOMAS and Justices WHITTINGTON and WRIGHT.

## OPINION

Opinion by Chief Justice THOMAS.

Timothy Von Eric Garner, Sr. appeals a final decree of divorce. In four interrelated issues, appellant complains of the child support award and, in two issues, he contends the trial court erred in entering a finding of a pattern of family violence and in appointing appellee, Ayesha Y. Garner, sole managing conservator of the parties' minor child. For the reasons stated below, we overrule all issues presented. Accordingly, we affirm the trial court's judgment.

### Factual Background

The parties were married on March 24, 2001. Prior to the marriage, they had a son, Timothy Von Eric Garner, Jr. Thirteen months after the marriage, appellant filed for divorce. Appellee filed an answer and counter-petition. Following an evidentiary hearing, the associate judge entered temporary orders in which the court made a finding of family violence, appointed appellee temporary sole managing conservator, and ordered appellant to pay temporary child support of $553.79 per month. Appellant did not appeal these rulings.

Approximately two years later, the trial court held a trial on the merits. The decree of divorce provides in relevant part that appellant was intentionally underemployed. The trial court ordered appellant to pay the sum of $553.79 per month in child support and the sum of $300 per month toward the child support arrearage of $12,850.64. Additionally, the trial court found there had been a pattern of family violence by appellant; thus, the decree appointed appellee sole managing conser-

vator. Appellant complains of these findings and rulings.

## Child Support

In the first four issues, appellant complains the trial court erred in determining he had available monthly net resources in the amount of $2768.79; finding that he was intentionally underemployed; deviating from the child support guidelines in setting child support; and failing to reduce the amount of arrearages owed under the temporary order. We disagree.

### A. Standard of Review

The trial court has wide discretion in determining child support, and we will reverse the order only if it appears from the record as a whole that the trial court abused its discretion. *In re E.A.C.*, 162 S.W.3d 438, 441 (Tex.App.-Dallas 2005, no pet.); *Deltuva v. Deltuva*, 113 S.W.3d 882, 886 (Tex.App.-Dallas 2003, no pet.). A trial court abuses its discretion when it acts in an arbitrary and unreasonable manner or when it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985).

Under the abuse of discretion standard, legal and factual sufficiency of the evidence are not independent grounds for review, but are relevant in assessing whether the court abused its discretion. *Niskar v. Niskar*, 136 S.W.3d 749, 753 (Tex.App.-Dallas 2004, no pet.). We review the evidence in the light most favorable to the order and indulge every presumption in favor of the trial court's order. *Deltuva*, 113 S.W.3d at 886. And, if some probative and substantive evidence supports the order, there is no abuse of discretion. *Id.*

### B. Establishing Net Resources, Intentional Underemployment, and Guidelines

Chapter 154 of the Texas Family Code establishes a multiple-step process for determining the amount of child support. The trial court must first determine the parties' gross income, net income, and monthly net resources. And, each party is required to furnish information sufficient to identify the party's net resources and ability to pay support, such as production of copies of income tax returns, financial statements, and pay stubs. After determining the amount of net resources, the trial court must decide whether to apply the child support guidelines or whether application of the guidelines would be unjust or inappropriate. *See* TEX. FAM.CODE ANN. §§ 154.001–.309 (Vernon 2002 & Supp.2006). Importantly, a parent's child support obligation is not limited to that parent's ability to pay from current earnings; rather it extends to his or her financial ability to pay from any and all available sources. *See In the Interest of Striegler*, 915 S.W.2d 629, 638 (Tex. App.-Amarillo 1996, writ denied).

Further, a trial court may order a parent to pay child support beyond the amount the parent's income would ordinarily indicate under the guidelines if the parent could potentially earn more money but has intentionally chosen not to. *See* TEX. FAM.CODE ANN. § 154.066 (Vernon 2002) (intentional unemployment or underemployment). A child support obligor qualified to obtain gainful employment may not avoid his support obligation by voluntarily remaining unemployed or underemployed. *Tenery v. Tenery*, 955 S.W.2d 337, 340 (Tex.App.-San Antonio 1997, no pet.).

For the trial court to make a finding of intentional underemployment or unemployment, there must be evidence the

parent reduced his income for the purpose of decreasing his child support payment. *In re P.J.H.*, 25 S.W.3d 402, 405 (Tex. App.-Fort Worth 2000, no pet.); *DuBois v. DuBois,* 956 S.W.2d 607, 610 (Tex.App.-Tyler 1997, no pet.). The requisite intent, or lack thereof, to be underemployed or unemployed for the purpose of determining a child support award may be inferred from such circumstances as the parent's education, economic adversities, business reversals, business background, and earning potential. *In re P.J.H.*, 25 S.W.3d at 406.

In *Pharo v. Trice,* 711 S.W.2d 282, 284 (Tex.App.-Dallas 1986, no writ), this Court upheld a trial court's order requiring a mother to pay child support even though she was not employed. In that case, the evidence showed the mother was on leave from her job as a flight attendant. *Id.* When she was working as a flight attendant, the mother earned approximately $1000 a month. *Id.* However, instead of working, she spent her time researching genealogy, playing tennis, helping friends put together a cookbook, and volunteering for the Dallas County Medical Auxiliary. *Id.* Further, the mother received $350 a month from an oil and gas lease, owned a Cadillac automobile, and employed a baby-sitter at a rate of $800 per month. *Id.* And, she lived in a house paid for by her new husband. *Id.* We concluded the record contained evidence from which the trial court could have found the mother had sufficient earning potential to enable her to pay child support of $500 per month. *Id.*

Here, appellant testified he worked as a mortgage associate for Homecomings Financial for two years and earned $13.76 per hour. Although appellant testified he was laid off from his job in August 2002, the company listed his reason for leaving as "resignation." Appellant admitted he accepted "release pay" of $2196.62. He then began accepting assignments from various temporary agencies. Appellant testified that despite his efforts, he had been unsuccessful in finding permanent employment in the two years since he lost his job and that he remained unemployed at the time of trial.

Appellant also testified he was a member of a singing group, which was a family outreach ministry. According to appellant, the group performed at concerts throughout the year. Although promoters paid the group for the performances, the money was used mainly for travel and lodging expenses. There was also evidence that on at least one occasion, promoters paid the group $2500 in addition to paying the lodging expenses. The group also accepted donations. When there was money left over after expenses, it was split among the group members. During the marriage, appellant traveled extensively with the group, and the majority of the travel was outside the State of Texas.

Appellant maintained that his current income was zero. Nevertheless, appellant claimed expenses of $350 per month in rent to his mother; $100 per month for food and household supplies; $331 per month for payments on a 1996 Jaguar; and $384.48 per month for payments on a 1996 Ford van. Appellant estimated his total monthly expenses at $2600.22, but said his mother helps him financially to pay his expenses, including child support. She also helped him by paying $1200 to save his car from repossession.

Appellant also jointly owned with his mother a bus that he valued at $20,000. He further testified that during the pendency of the divorce, he paid his attorneys $3700 out of money he had saved. Although he received more than $2100 at the time he left Homecoming Financial, he admitted that only perhaps $100 to $140 of

it went to support his child. Although required to do so by the family code and the temporary orders, appellant produced no financial information to support his claims regarding his income.

As the fact finder, the trial court had the discretion to disbelieve appellant's testimony and was not required to accept appellant's evidence of his income and net resources as true. *See Friermood v. Friermood,* 25 S.W.3d 758, 760 (Tex.App.-Houston [14th Dist.] 2000, no pet.). Because the trier of fact is in a better position to determine the candor, demeanor, and credibility of the witnesses, we will not substitute our judgment for that of the trial court. *See Dishner v. Huitt–Zollars, Inc.,* 162 S.W.3d 370, 378 (Tex.App.-Dallas 2005, no pet.).

From the evidence, the trial court could have reasonably concluded that in the two years after he lost his job, appellant could have obtained employment that would pay him a salary similar to the one he received from his prior employer. After reviewing the evidence, we cannot say the trial court abused its discretion in finding appellant was intentionally underemployed. Further, the trial court could reasonably have determined appellant did in fact derive income from his participation in the musical group concerts and that appellant received financial support from his mother. Looking to all sources available to appellant, the record contains evidence from which the trial court could have concluded appellant has net resources of $2768.97 per month available to him. *See In re P.J.H.,* 25 S.W.3d at 406. We overrule issues two and four.

Appellant also argues the trial court erred in deviating from the child support guidelines in setting the child support amount. This argument appears to stem from his contention that he has no income. As explained above, the trial court did not abuse its discretion in finding appellant was intentionally underemployed and in finding that he has net resources available to him in the amount of $2768.79 per month. According to the family code guidelines, appellant should pay twenty percent of the first $6000 of his monthly net resources toward the support of his one child. *See* TEX. FAM.CODE ANN. § 154.125 (Vernon 2002). The trial court set the child support at $553.79, which is twenty percent of $2768.97. Thus, the trial court did not err in setting the amount of support. Therefore, we overrule appellant's first issue.

### C. Child Support Arrearages

Appellant also asserts the trial court erred in failing to order a retroactive reduction in support. In this connection, appellant continues to argue that because he is unemployed and has no income, the trial court should have applied the child support guidelines to his income of zero. Thus, he maintains the trial court should have reduced the child support owed under the temporary order. And, he further contends the child support amount should have been reduced as of April 2003, the date appellee allegedly was served with appellant's motion to modify. As a part of this issue, appellant also appears to argue that the child support arrearage or a portion thereof should be forgiven because of his financial condition. We conclude these arguments have no merit.

A trial court unquestionably has authority to modify temporary orders until the issuance of a final decree. *See* TEX. FAM. CODE ANN. § 105.001(a) (Vernon Supp. 2006). And, any modification of a temporary order is to be based on the "safety and welfare of the child." *Id.* However, a modification requires a motion to modify, service upon respondent, and a hearing. TEX. FAM.CODE ANN. § 105.003(a) (Vernon

2002); TEX.R. CIV. P. 21, 21a. Further, a modification order may not grant relief that a party did not request and may not resolve an issue that was not raised by the motion. TEX.R. CIV. P. 45, 47.

Appellant's motion to modify is not included in the appellate record. Thus, we do not know what relief he requested, *e.g.* whether the motion requested a reduction of child support, and if so, whether there was a request that any modification be retroactive to the date of service. The record does, however, indicate that there were no hearings in this case between the original temporary hearing on May 14, 2002 and the trial on the merits on June 30, 2004. Assuming, without deciding, that the issue of retroactive modification is properly before this Court, we will address the merits of appellant's argument.

As indicated herein, a trial court is accorded broad discretion in modifying child support payments, and absent a clear abuse of discretion, the order will not be disturbed on appeal. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex.1982); *In re J.R.D.*, 169 S.W.3d 740, 743 (Tex.App.-Austin 2005, pet. denied). Inasmuch as we have upheld the trial court's findings of intentional underemployment and the amount of the monthly net resources available to appellant, the trial court did not abuse its discretion in refusing to reduce the amount of unpaid child support.

■ Likewise, we reject appellant's argument that the arrearages or a portion thereof should have been forgiven. Appellee filed an amended counter-petition for divorce, which included a request for enforcement of the child support arrearages under the temporary order. The evidence clearly established the amount of the child support that should have been paid and the sums appellant actually paid. Under the facts of this case, we conclude the trial court did not have authority to reduce or modify the amount of child support arrearages.

Section 105.001(f) provides that temporary orders are subject to and enforceable under Chapter 157 (Enforcement) of the family code. TEX. FAM.CODE ANN. § 105.001(f) (Vernon Supp.2006). One of the enforcement remedies available is a money judgment for arrearages. *See* TEX. FAM.CODE ANN. §§ 157.261–.269 (Vernon 2002 & Supp.2006). Section 157.262 specifically states in relevant part,

(a) Except as provided by this section, . . . in rendering a money judgment, the court may not reduce or modify the amount of child support arrearages.

\* \* \*

(f) The money judgment for arrearages rendered by the court may be subject to a counterclaim or offset as provided by this subchapter.

TEX. FAM.CODE ANN. § 157.262 (Vernon 2002).

Inasmuch as the counterclaim or offset encompassed in this subchapter is limited to certain arrearages that have been assigned to the Title IV–D agency, the provisions do not apply in this case. And, although section 157.008 provides express affirmative defenses to motions to enforce child support, they too are inapplicable to the facts of this case. *See id.* § 157.008; *see also In the Interest of M.C.R.*, 55 S.W.3d 104, 108 (Tex.App.-San Antonio 2001, no pet.). Because appellee sought enforcement of the unpaid child support and established the amount of arrearages, and there is no evidence to support a counterclaim or offset, we conclude the trial court lacked authority to reduce the arrears. Accordingly, we overrule appellant's third issue.

## Family Violence

In issues five and six, appellant contends the trial court erred in appointing appellee sole managing conservator because there was no evidence to support a finding of family violence. The determination of who should be appointed a managing conservator is left to the sound discretion of the trial court. *Naguib v. Naguib,* 137 S.W.3d 367, 372 (Tex.App.-Dallas 2004, pet. denied). The trial court is in the best position to determine what will be in the best interest of the child because it faced the parties and their witnesses, observed their demeanor, and had the opportunity to evaluate the claims made by each parent. *Id.*

The trial court's discretion, however, is subject to the provisions of section 153.004 of the family code, which applies when there is a history of domestic violence within the family. *See* TEX. FAM.CODE ANN. § 153.004 (Vernon Supp.2006). Specifically, the code provides

> [t]he court may not appoint joint managing conservators if credible evidence is presented of a history or pattern of past or present child neglect, or physical or sexual abuse by one parent directed against the other parent, a spouse, or a child. . . .

*Id.* § 153.004(b).

Appellee testified that in 2000, before she became pregnant, appellant grabbed her by the neck and threw her onto the bed at appellant's mother's house. A week after the birth of their baby, appellant became angry at appellee for instructing appellant's niece about how to hold the baby. According to appellee, appellant yelled at her, pushed her into a closet, and choked her. Appellee testified that appellant's mother had to pull appellant off of her. As a result of this incident, appellee began bleeding. Appellee testified about a third incident in October 2001, when appel-

lant grabbed appellee and slammed her head twice into the kitchen cabinets. Appellee testified about another incident on their anniversary in which appellant struck her while she was holding their child. According to appellee, she was holding the baby, and appellant demanded that she give the baby to him. When she said no, appellant struck her in the jaw with his fist. He then pushed her back onto the bed as she was still holding the baby and pulled on the baby. When the baby began crying, appellee let go of the infant. Although appellee called the police, she did not request that appellant be arrested once they arrived. Appellee also testified about occasions when appellant called her names and abused her verbally.

Appellant denied that he was ever physically abusive to appellee. Appellant's mother also denied she had witnessed appellant physically abusing appellee. However, appellant's mother admitted she had seen appellant and appellee "get in altercations" and that appellee had complained about "the way [appellant] talks . . . to her." Although denying she witnessed any physical violence by appellant shortly after the birth of her grandchild, appellant's mother admitted she heard "the fuss" from another room and, on approaching appellant, pulled his arm and said "y'all need to stop this." She then asked appellee how she was doing. Appellant's aunt testified appellee called her after the parties separated and denied there had been physical violence in the marriage. Appellee denied making this statement.

As we have previously stated that "[w]here, as here, the parties testified to different versions of the same encounter, we recognize that the trial court is the sole judge of the weight and credibility of the evidence." *Burns v. Burns,* 116 S.W.3d 916, 920 (Tex.App.-Dallas 2003, no pet.). A trial court does not abuse its discretion

when it makes a decision on conflicting evidence. *See Kirkpatrick v. Mem'l Hosp. of Garland,* 862 S.W.2d 762, 776 (Tex.App.-Dallas 1993, writ denied). Based on the above evidence, we conclude the trial court did not abuse its discretion in making a finding of family violence.

Because the trial court did not abuse its discretion in making a finding of family violence and the family code prohibits the appointment of joint managing conservators where there is evidence of a history of physical abuse, the court did not abuse its discretion by appointing appellee sole managing conservator. We overrule issues five and six.

Accordingly, we affirm the trial court's judgment.