**In the Interest of A.B.A.T.W., A.A.L.W., and A.B.C.W., Minor Children.**

**No. 05–07–00953–CV.**

Court of Appeals of Texas, Dallas.

Sept. 19, 2008.

---

Andrew L. Farkas, Andrew L. Farkas & Associates, Plano, TX, pro se.

Mark Rush Williamson, Dallas, TX, for Appellee.

Before Justices MORRIS, WHITTINGTON, and O'NEILL.

## OPINION

Opinion by Justice WHITTINGTON.

Richard Wells (Father) appeals the trial judge's order increasing the amount of his child support obligation. In three issues, Father contends the trial judge abused her discretion because the evidence does not support (1) a substantial or material change in the circumstances of the children or a person affected by the original child support order; (2) the amount of child support awarded by the trial judge; or (3) a retroactive award of child support.

## Background

Father and Amanda Wells Jones (Mother) were divorced on January 10, 2001. The divorce decree suspended Father's child support obligation while Father was incarcerated, but ordered that on the thirtieth day of Father's release or parole from any federal or state penitentiary and halfway house, Father was to begin making monthly child support payments of thirty percent of his net monthly income or of the federal minimum wage for a 40–hour week, whichever was greater.

Father testified he had been convicted on both state and federal charges of "misapplication, misapplication of trust funds, bank fraud and a shell corporation." He was released from the federal penitentiary in 1999 and from the state penitentiary in either August or September of 2002. After his release, Father began working for Latham Roofing.

On November 5, 2002, Mother filed a petition to modify the parent-child relationship, alleging there had been a material and substantial change in the circumstances of the children or a person affected by the previous child support order and seeking an increase in Father's child support obligation. Father filed his answer to the petition on December 4, 2002.

Also in December 2002, Father was issued twenty percent of the shares of Eclat Private Equity, Inc., a corporation owned by Father and his mother. Eclat owns Eclat Roofing. Father admitted Eclat Roofing's website indicated he is president of Eclat and Eclat runs a restaurant, bowling alleys, a sports bar, a roofing company, and real estate management and investment companies.

During the last four months of 2002, Father earned gross receipts of $10,500 from his employment at Latham Roofing. Between January 1, 2003 and late June or early July, Father earned gross receipts of $69,693.21 from his employment. In mid–2003, Father quit his job and began working for Eclat. Father admitted he could have continued to work for Latham Roofing and earned another $69,000 for the last six months of 2003. However, Father claimed the $69,693.21 was actually earned by Eclat, but was reported on Father's social security number because Eclat did not have a tax number.

Eclat paid Father $500 per week. Periodically, when Eclat did not have sufficient revenue, Father worked for the restaurant or for one of the bowling alleys owned by his mother and several other people. Regardless of whether Father worked for Eclat, the restaurant, or the bowling alleys, Father earned $500 per week from mid–2003 through the trial in February 2007.

Mother testified Father picks up the children in a late-model Mercedes S–Class sedan or a Range Rover. Mother does not know who owns the vehicles. Father testified his girlfriend owned a Range Rover that he was allowed to drive. In December 2006, Eclat purchased a Land Rover

for $52,185. Eclat also purchased a 2000 Mercedes for $38,900 and a Ford pickup for $36,000. However, Father's son was in a wreck in the Ford and the vehicle was totaled by the insurance company.

Mother also testified Father keeps a "substantial amount of cash" in his pocket. When Mother asked Father to pay extra child support, he responded he could not "give [her] more money without reporting to the court officer and to the other individuals to whom he pays restitution more money." According to Mother, Father indicated he could not pay her more money without paying everybody more money. Father testified he did not keep a substantial amount of cash, but periodically withdrew a "couple of hundred" dollars from an ATM for his personal use.

Mother introduced charges on Eclat's credit card of $50,900 that she believed were for Father's personal expenses. Mother testified some of the charges were for Father taking the children to dinner. Mother has no knowledge about what was purchased in a number of the charges to Wal–Mart, Hobby Lobby, PetCo, Wal–Greens, and other merchants listed on the credit card statements. Mother believes a diamond ring was purchased at Dallas Gold and Silver using Eclat's credit card. She also believes a charge to a nail salon had nothing to do with the roofing business. Mother has no knowledge of who made any particular charge.

Father testified the charges on Eclat's credit card were business expenses. Father did not know whether he made any specific charge or whether a charge was made by his mother or an independent contractor working for Eclat to whom his mother issued a credit card. Further, Father's son, who attended school in Lubbock, made charges on Eclat's credit card after talking to Father's mother about the expenses. As to the charge to Mercedes Benz in Lubbock, Father admitted that company did not sell building supplies. There were additional charges in Lubbock that were also likely made by his son. Father also conceded the restaurants listed on the credit card statements did not sell roofing supplies. Father was not sure about whether three charges at a liquor store were for a business party.

When questioned about checks written on Eclat's bank account, Father testified he is not allowed under his parole conditions to have a bank account. Father's mother wrote all the checks on the Eclat account. One of the checks for $841.00 was probably for the Mercedes in his mother's and his son's name. He "imagined" the check for $4,862 to his ex-girlfriend was for the partnership in the restaurant. A check for $1,500 written to Richard Wells in August 2003 would have been to his son. Father claimed checks for $900 to Seay Tennis Center, $211 to Providence Music Academy, $200 to Jay Rock's Gym, and $200 to Highland Park Gymnastics were for donations for the children. However, the evidence reflects Eclat wrote monthly checks to Providence between August 2003 and December 2003 and to Jay Rock's Gym between August 2003 and November 2003. The checks were for various amounts, including $211.95, $182.35, and $107 to Providence.

Father testified his criminal conviction made it impossible for him to work for any company that was not owned by family or people who are aware of his situation. Father has a degree in economics and earned a masters of business administration after he was released from the penitentiary. However, he asserts even the advanced degree had not assisted him in obtaining a higher paying position. Father did not testify about any specific position he had applied for and did not receive.

Father currently lives with his wife in Grapevine, but had lived with his mother in Rockwall. Father did not pay his mother rent, but performed all of the maintenance on the house. Father testified he was not attempting to avoid paying additional child support.

The trial court granted the petition to modify and ordered Father to pay child support of $1,500 per month. Father appealed.

## Standard of Review

 The trial judge has broad discretion in setting or modifying child support payments, and we will reverse the trial judge's order only if it appears from the record as a whole that the trial judge abused her discretion. *In re J.D.D.*, 242 S.W.3d 916, 919 (Tex.App.–Dallas 2008, pet. denied). A trial judge abuses her discretion when she acts in an arbitrary and unreasonable manner, or when she acts without reference to any guiding principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985); *Garner v. Garner*, 200 S.W.3d 303, 306 (Tex.App.–Dallas 2006, no pet.).

 Under the abuse of discretion standard, legal and factual insufficiency issues are not independent grounds of error, but are relevant in assessing whether the trial judge abused her discretion. *J.D.D.*, 242 S.W.3d at 920. We review the evidence in the light most favorable to the order and indulge every presumption in favor of the trial judge's ruling. *J.D.D.*, 242 S.W.3d at 920. If some probative and substantive evidence supports the order, there is no abuse of discretion. *Garner*, 200 S.W.3d at 306. Because there are no findings of fact or conclusions of law, the trial judge's order must be upheld on any legal theory that finds support in the evidence. *Worford v. Stamper*, 801 S.W.2d

108, 109 (Tex.1990) (per curiam); *J.D.D.*, 242 S.W.3d at 920.

## Modification of Child Support

The trial judge may modify a previous child support order if "the circumstances of the child or a person affected by the order have materially and substantially changed" since the date of the order's rendition. Act of May 29, 2005, 79th Leg., R.S., ch. 916, § 19, 2005 Tex. Gen. Laws 3148, 3154 (amended 2007) (current version at TEX. FAM.CODE ANN. § 156.401(a)(1)(A)(Vernon Supp.2008)). The trial court may consider the child support guidelines in chapter 154 of the family code in determining whether there has been a material or substantial change of circumstances. TEX. FAM.CODE ANN. § 156.402(a) (Vernon 2002). If the amount of ordered child support does not substantially conform with the guidelines, the trial judge may modify the order to substantially conform with the guidelines if the modification is in the best interest of the child. TEX. FAM.CODE ANN. § 156.402(b). It is presumed a child support payment established by the guidelines is in the best interest of the child. TEX. FAM.CODE ANN. § 154.122(a) (Vernon 2002).

 Importantly, a parent's child support obligation is not limited to that parent's ability to pay from current earnings; rather it extends to his financial ability to pay from any and all available sources. Act of Apr. 6, 1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex. Gen. Laws 113, 160 (amended 2007) (current version at TEX. FAM.CODE ANN. § 154.062 (Vernon Supp.2008)); *J.D.D.*, 242 S.W.3d at 922. Thus, if a parent's actual income is significantly less than what he could earn because of intentional underemployment, the trial judge may apply the child support guidelines to the parent's earning potential. TEX. FAM. CODE ANN. § 154.066 (Vernon 2002); *Gar-*

*ner*, 200 S.W.3d at 306. In order to find a parent intentionally underemployed, the evidence must show the parent reduced his income for the purpose of decreasing his child support payments. *Garner*, 200 S.W.3d at 306–07; *see McLane v. McLane*, No. 01–06–00634–CV, 2008 WL 1917293, at *2 (Tex.App.–Houston [1st Dist.] May 1, 2008, pet. denied). The requisite intent, or lack thereof, may be inferred from such circumstances as the parent's education, economic adversities, business reversals, business background, and earning potential. *Garner*, 200 S.W.3d at 307.

### Intentional Underemployment

■ In his second issue, Father contends the trial judge abused her discretion in increasing his child support obligation because the evidence established Father earned only $500 per week and there was no evidence Father was intentionally underemployed.

Father testified he had earned $500 per week since the middle of 2003 and could not earn more due to his criminal convictions. However, the record reflected Father earned almost $70,000 in the first six months of 2003, and Father admitted he could have earned an additional $60,000 in the last six months of 2003. Father claimed Eclat, rather than Father, earned the $69,000, but Father owned twenty percent of Eclat with his mother owning the remainder of the company.

Mother testified Father drove late model cars, carried a substantial amount of cash, and used Eclat's funds to pay personal expenses. Father claimed either his girlfriend or Eclat owned the cars and Eclat's funds were used to pay business expenses. However, Father also admitted Eclat's funds were used to pay his son's personal expenses and that many of the charges were at locations that did not sell roofing supplies. Further, although Father claimed checks written to Jay Rock's Gym and Providence Music Academy were donations, this contention was cast into doubt by the fact monthly checks were written to these establishments between August 2003 and December 2003. Therefore, the evidence supports a finding Father used Eclat funds to pay personal expenses.

Father has a college degree in economics and a masters of business administration. Although Father claimed he could not earn more than $500 per week due to his criminal convictions, he earned more than $500 per week when working for Latham Roofing. Father failed to offer any evidence of specific positions he applied for and had not received. Further, Father worked only for companies owned by him or his mother since mid–2003. Finally, Father told Mother he could not pay her more money because he would then be required to pay more in restitution to the victims of his crimes. This is some evidence Father avoided making additional money in order to keep both his child support and restitution payments low.

■ Although the evidence was conflicting, the trial judge was in position to evaluate Father's credibility and was not required to accept Father's testimony about the reasons for his underemployment, his income, and his net resources as true. *J.D.D.*, 242 S.W.3d at 922; *Garner*, 200 S.W.3d at 308. The trial judge was in a better position to determine the candor, demeanor, and credibility of the witnesses, and we will not substitute our judgment for that of the trial judge. *J.D.D.*, 242 S.W.3d at 922; *Garner*, 200 S.W.3d at 308. Because the evidence supports findings Father had the potential to earn $130,000 per year, was intentionally underemployed, and had significant resources available to him through Eclat, the trial judge did not abuse her discretion in finding Father's

child support obligation was not in substantial compliance with the child support guidelines. *See* TEX. FAM.CODE ANN. § 156.402(b).

 We next turn to whether the trial court abused her discretion in ordering Father to pay $1,500 per month in child support. The evidence supported a finding that Father's net monthly resources exceeded $6,000. *See* Act of Apr. 6 1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex. Gen. Laws 133, 162 (amended 2007) (current version at TEX. FAM.CODE ANN. § 154.125(a) (Vernon Supp.2008)) (apply child support guidelines to first $6,000 of net resources).[1] Even taking into account Father's testimony he had a six-month-old child who was not before the court, the ordered child support of $1,500 per month was within the child support guidelines. *See* TEX. FAM.CODE ANN. § 154.129 (Vernon 2002).

The trial judge did not abuse her discretion by modifying Father's child support obligation to substantially comply with the child support guidelines. We overrule Father's second issue.

Because the trial judge's order can be affirmed based on a finding Father was underemployed, we need not consider Father's contention in his first issue that the trial court abused her discretion in granting the petition because there was no evidence of a material and substantial change in the children's circumstances. We overrule Father's first issue.

**Retroactive Application**

 In his third issue, Father asserts the trial judge abused her discretion in retroactively increasing Father's child support obligation to commence as of April 5, 2004 because there was no evidence as to the financial circumstances of the children or of Father as of April 5, 2004.[2] However, the evidence established Father quit his job with Latham Roofing in June or July of 2003. The evidence also supports a finding Father was underemployed after he quit working for Latham Roofing. Accordingly, the trial judge did not abuse her discretion in increasing Father's child support obligation as of April 5, 2004. We overrule Father's third issue.

We affirm the trial judge's order.

---

1. Effective September 1, 2007, the Texas Legislature amended the statute to apply the child support guidelines to the first $7,500 of the obligor's net monthly resources. TEX. FAM. CODE ANN. § 154.125(a) (Vernon Supp.2008). This change applied only to a suit affecting the parent child relationship commenced on of after September 1, 2007 and does not apply in this case.

2. On April 5, 2004, the trial judge granted Mother's motion to enforce and entered a judgment finding Father owed Mother $11,794.12 in unpaid child support, un-

paid/unreimbursed medical insurance for the benefit of the children, and unreimbursed health care expenses for the children from September 27, 2002 through April 5, 2004. In the order granting Mother's petition to modify, the trial judge found *res judicata* barred any claim for child support prior to April 5, 2004.