Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio




# MEMORANDUM OPINION

No. 04-10-00115-CV

**IN THE INTEREST OF S.M.B. AND A.H.B.**, Minor Children

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 1998-CI-17454
Honorable Gloria Saldana, Judge Presiding

Opinion by:    Phylis J. Speedlin, Justice

Sitting:        Phylis J. Speedlin, Justice
               Rebecca Simmons, Justice
               Steven C. Hilbig, Justice

Delivered and Filed:  June 8, 2011

REVERSED AND RENDERED

This appeal arises from a modification of child support in a suit affecting the parent-child relationship.  Because we hold the evidence is legally insufficient to support the trial court's modification order, we reverse and render judgment that the petition to modify is denied.

## BACKGROUND AND PROCEDURAL HISTORY

Eugene W. Bloom and Rosanna M. Bloom were married in 1994, and had two children together.  From 1992 to 1997, Eugene Bloom was employed as a professional engineer at San Antonio Water Systems (SAWS); he holds a bachelor's and master's degree in Civil Engineering.  In 1997 when he left SAWS, Eugene was making a gross annual salary of $34,000.  Due to his mother's poor health, Eugene began helping his mother manage her 6-unit motel; he

also opened a small restaurant nearby. The Blooms divorced in 2000. The agreed final divorce decree appointed the parents joint managing conservators and established the children's primary residence with Rosanna; Eugene was ordered to pay $400 in monthly child support. The decree also ordered that the children continue to be enrolled under the health insurance plan provided by Rosanna's employer for so long as such insurance was available. After the divorce, Eugene began living rent-free in an apartment behind the motel.

In 2001, Eugene enrolled in law school; he graduated in May 2004. In June 2004, Rosanna obtained a modification of child support which increased the monthly amount from $400 to $550 based on Eugene's monthly net resources of $2,730; he had continued to manage the motel and had some income from property rentals. In May 2007, Eugene obtained his law license; however, to date, he has not sought employment as a lawyer and has not practiced law, except for handling one legal matter for his mother.

In August 2007, Rosanna Bloom filed a petition to modify the parent-child relationship in which she sought an increase in child support. After a contentious discovery period, a bench trial was held in May 2009. The trial court granted the petition to modify and ordered an increase in Eugene's monthly child support from $550 to $1,122.37 based on its finding that his monthly net resources are $6,667; the court found his "gross annual earnings from all sources available to him are $80,000." The court also ordered Eugene to reimburse Rosanna for the children's monthly health insurance premium of $187 as additional child support, and to pay $15,000 for Rosanna's attorney's fees, plus conditional appellate fees of $10,000. In addition, the court made the increased child support and reimbursement of health insurance premiums effective as of the date of service on September 1, 2007, which resulted in an arrearage of $20,384.86 (including accrued interest) for the period from September 1, 2007 to September 30, 2009, for

which the court entered a cumulative judgment; the court also ordered post-judgment interest. Finally, the court ordered Eugene to pay $300 per month toward the child support arrearage and $250 per month toward the attorney's fees award. Eugene now appeals.

## ANALYSIS

Eugene raises eleven issues on appeal[1] challenging the modification increasing his monthly child support payment and adding the children's health insurance costs, the judgment for child support arrearages and interest, and the award of attorney's fees. We apply an abuse of discretion standard to all of the issues. Generally, orders in a suit affecting the parent-child relationship may not be overturned on appeal unless the appellant shows the trial court clearly abused its discretion. *In re C.A.M.M.*, 243 S.W.3d 211, 214 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (citing *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam)). An abuse of discretion occurs when a trial court acts arbitrarily, unreasonably, or without regard to guiding principles of law. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985); *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). A trial court also abuses its discretion by failing to correctly analyze or apply the law. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).

### *Increase in Child Support and Assessment of Health Insurance Costs*

In his first issue, Eugene Bloom asserts the court abused its discretion in increasing his monthly child support payment from $550 to $1,122.37 because it is based on the court's finding that his net monthly resources are $6,667, which is not supported by any evidence in the record; he also contends the increase in child support exceeds his proven ability to pay, and exceeds the proven needs of the children. In his third issue, Eugene also challenges the court's order that he

---

[1] Rosanna Bloom moved to strike Eugene's appellant's brief for failure to comply with Rule 38.1; we deny the motion to strike. *See* TEX. R. APP. P. 38.1.

pay the children's health insurance costs. In its final modification order, the trial court found that Eugene Bloom is "self-employed as an attorney and an engineer and his gross annual earnings from all sources available to him are $80,000," and that an increase in child support is in the best interest of the children. The court further made the following findings regarding child support under section 154.130 of the Family Code:

> 1. the amount of child support ordered by the Court is in accordance with the percentage guidelines;
>
> 2. the amount of net resources available to EUGENE W. BLOOM per month is $6667.00;
>
> 3. the amount of net resources available to ROSANNA BLOOM per month is $2000.00;
>
> 4. the amount of child support payments per month that is computed if the percentage guidelines of section 154.125 of the Texas Family Code are applied to the first $7,500 of EUGENE W. BLOOM's net resources is $1122.37; and
>
> 5. the percentage applied to the first $7,500 of EUGENE W. BLOOM's net resources for child support by the actual order rendered by the Court is 25 percent.

*See* TEX. FAM. CODE ANN. § 154.130 (West 2008).[2]

We first address Eugene's assertion that there is insufficient evidence to support the court's finding that his net monthly resources are $6,667. When abuse of discretion is the applicable standard of review, as it is here, sufficiency of the evidence issues are not independent grounds for review, but rather relevant factors in determining whether the trial court abused its discretion. *Gardner v. Gardner*, 229 S.W.3d 747, 751 (Tex. App.—San Antonio 2007, no pet.). We engage in a two-prong analysis to determine "(1) whether the trial court had sufficient information upon which to exercise its discretion; and (2) whether the trial court erred in its

---

[2] Section 154.130 was amended effective June 19, 2009. *See* Acts 2009, 81st Leg., R.S., ch. 767, §§ 6, 37, Tex. Gen. Laws 2009 (effective June 19, 2009). The 2009 amendment does not apply to this modification proceeding because it was commenced prior to the effective date of the amendment.

application of discretion." *Id.*; *In re Guardianship of C.E.M.-K.*, No. 04-10-00385-CV, 2011 WL 534389, at *10 (Tex. App.—San Antonio Feb. 16, 2011, pet. filed). Thus, we first determine whether sufficient evidence exists under traditional sufficiency standards of review; if so, we then determine whether the court's decision was reasonable. *Gardner*, 229 S.W.3d at 751; *Garza v. Garza*, 217 S.W.3d 538, 549 (Tex. App.—San Antonio 2006, no pet.); *see In re C.E.M.-K.*, 2011 WL 534389, at *10 (discussing sufficiency standards). In considering legal sufficiency, we review the evidence in the light most favorable to the order and indulge every reasonable inference in favor of the order. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). As long as there is some probative and substantive evidence to support its order, a trial court does not abuse its discretion. *Garza*, 217 S.W.3d at 549. The trial court is in the best position to observe the witnesses' demeanor and assess their credibility; therefore, as the fact finder, it is given great latitude in determining the children's best interests with respect to child support. *Murff v. Murff*, 615 S.W.2d 696, 700 (Tex. 1981); *In re R.H.H.*, No. 04-09-00325-CV, 2010 WL 2842905, at *3 (Tex. App.—San Antonio July 21, 2010, no pet.) (mem. op.). The trial court's primary consideration in determining questions of child support is always the best interest of the children, and the court has broad discretion in making the equitable decision whether to modify a prior support order. *In re J.A.H.*, 311 S.W.3d 536, 541-42 (Tex. App.—El Paso 2009, no pet.).

Under Chapter 156 of the Family Code, the court may modify a child support order, including an order for health care coverage under section 154.182, if three years have passed since the child support order was last modified and the monthly child support differs by either 20% or $100 from the amount that would be awarded under the child support guidelines. *See* TEX. FAM. CODE ANN. § 156.401(a)(2) (West 2008). The trial court in this case based its

modification on such a finding. A parent's duty to support their child is not limited to the parent's ability to pay from current earnings, but also extends to the parent's ability to pay from any and all sources that might be available. *Garner v. Garner*, 200 S.W.3d 303, 306 (Tex. App.—Dallas 2006, no pet.), *overruled on other grounds*, *Iliff v. Iliff*, No. 09-0753, 2011 WL 1446725 (Tex. April 15, 2011). A parent's "net resources" used in calculating child support under the Texas Family Code includes all wage and salary income, other compensation for personal services, interest, dividend and royalty income, self-employment income, net rental income, and all other income actually being received, with deductions for social security taxes, federal and state income taxes, union dues, and the children's health insurance expenses. TEX. FAM. CODE ANN. § 154.062(b), (d) (West Supp. 2010). A trial court may order a parent to pay child support beyond the amount indicated by application of the guidelines to the parent's net resources upon a finding that the parent is intentionally unemployed or underemployed. *See* TEX. FAM. CODE ANN. § 154.066 (West 2008); *see also Iliff*, 2011 WL 1446725, at *4-5 (requiring the trial court to make an express finding of intentional unemployment or underemployment when it is supported by the record, but rejecting any requirement that the intent to avoid child support be proved).

Here, the evidence developed at the modification hearing established that, since the last child support modification in 2004, Eugene has earned approximately $30,000 per year. Eugene testified that, from 2004 through the date of the May 6-7, 2009 hearing, he has received a salary for managing his mother's motel, briefly earned income from operating and then renting out a bar he opened next to the motel, and periodically earned rental income from two pieces of residential property that he owns. Eugene's federal tax returns show that he is "self-employed" and that his gross income in 2005, 2006 and 2007 was $30,961, $20,611, and $28,911,

respectively. At the time of the hearing, Eugene's 2008 income tax return had not yet been filed, but he estimated his 2008 gross income to be approximately $30,000, and expected about the same income for 2009. Eugene testified that he opened a bar next to the motel in 2004, and earned $27,000 in total receipts from the bar in 2004, and $16,740 from renting the bar in 2005; however, the bar has not been either operated or rented out since June 2007, and is currently in need of repairs. In 2004 Eugene earned $825 for writing a few opinion letters as an engineer, but has not otherwise worked as, or sought employment as, a professional engineer. Similarly, since obtaining his law license in 2007, he has not sought any employment as a lawyer and has not practiced law on a self-employed basis; the only exception is that he handled an estate planning matter for his mother and received a $1,000 fee for those legal services in 2007. His legal and engineering licenses are current.

Eugene testified that, at the time of the May 2009 hearing, his income consisted of $1,200 per month as salary for managing his mother's motel, and $1,045 per month rental on a home he owns at 9315 Autumn Sunrise, which amounts to $2,245 in gross monthly income. He explained that his other residential property at 9559 Autumn Shade has foundation problems and is not in rentable condition. Eugene stated that, since 2004, he has been residing in the apartment behind his mother's motel, without paying rent or utilities. He estimated his monthly expenses for food, gas, and telephone as $188 per month. He has five credit cards and carries an outstanding balance of approximately $50,000; his available line of credit on all his credit cards totals approximately $130,000. Rosanna presented expert testimony that a civil engineer with ten years' experience makes a gross salary of $110,000 in San Antonio.

Based on this evidence, the trial court found that Eugene's child support payment should be based on $80,000 of gross annual income. The court reasoned on the record that, "he's paid

about $1,200 a month for managing the motel . . . the fact that he gets to live rent free at the motel would certainly count as income. He doesn't have to pay utilities there. That would be income. So just adding those things up, I believe, at the very least, he could be earning 61,000; or his actual earnings reflecting the 1,200 a month and the forbearance on the living expenses, plus the 34,000 he earned while he was at SAWS, brings me right up to about 61,000."[3] It appears from the record that the court added an extra $20,000 to reach $80,000 in annual gross income by considering other unspecified income streams. The court noted that Eugene's tax returns reflect that he owns the motel and bar property which are "some pretty significant assets to obtain on $40,000 a year," and that the house on Autumn Shade was not yet rented. The court also stated, "I think it's significant that his line of credit is 130-something-thousand. I think that's not easy to get in this economy. So it tells me that there are other, perhaps, income streams. I don't know exactly what that would be based on, but I don't think that is something that is lightly given."

The evidence does not support the court's finding that Eugene has a gross income of $80,000 per year, or net resources of $6,667 per month, as recited in the modification order. The court's comments show that more than half of the calculation of $61,000 in gross annual income was based on Eugene's $34,000 salary at SAWS, which he last earned in 1997. The additional increase from $61,000 to $80,000 in gross income was based on "other income streams" which the court speculated might exist. There is no evidence in the record to support the court's finding

---

[3] Based on this calculation, the trial court used $1,050 per month as the living expenses that Eugene does not have to pay.

that Eugene Bloom's gross annual earnings from all sources is currently $80,000, or that his monthly net resources are currently $6,667.[4]

In making its oral findings at the end of the hearing, the trial court did refer to section 154.066, which permits a court to apply the child support guidelines to an obligor's earning potential when the actual income is significantly less than the obligor could earn due to intentional unemployment or underemployment. TEX. FAM. CODE ANN. § 154.066. However, the court never made a finding that Eugene was "intentionally unemployed or underemployed," as required. *See Iliff*, 2011 WL 1446725, at *5. The final modification order contains no finding of intentional unemployment or underemployment, and makes no reference to section 154.066. Moreover, the court's written findings in the order make no reference to "potential earnings;" rather, the court states in the affirmative that Eugene's gross annual earnings "are $80,000," and the amount of net resources available to him each month "is $6667.00." Finally, although the order recites that "the material allegations in the petition to modify are true," the petition does not allege Eugene is intentionally unemployed or underemployed; it merely states that three years have passed since the last modification and the amount of monthly support differs by 20% from the support under the guidelines. Neither the court's written order nor the record reflects a finding that Eugene Bloom is intentionally unemployed or underemployed and that $80,000 reflects his potential, rather than his actual, annual earnings.

Accordingly, we conclude that the evidence is legally insufficient to support the court's finding that Eugene Bloom's actual gross annual earnings are $80,000, and that his actual monthly net resources are $6,667. Therefore, the trial court abused its discretion in increasing

---

[4] The trial court's finding of a monthly "net resources" amount of $6,667 is arrived at by dividing the $80,000 gross income by 12 months; it does not reflect deduction of the expenses allowed by section 154.062(d) and is therefore not a "net" figure. *See* TEX. FAM. CODE ANN. § 154.062(d); *see, e.g.*, TEX. FAM. CODE ANN. § 154.061 (West Supp. 2010) (Office of the Attorney General 2010 Tax Chart used for calculating net resources of obligor).

Eugene's monthly child support, and in ordering him to pay the children's health insurance costs, based on those erroneous findings. *See Gardner*, 229 S.W.3d at 751. Because we sustain Eugene's challenge to the sufficiency of the evidence to support the increase in child support and assessment of health insurance costs, we need not address his other issues challenging the judgment for arrearage based on the increase in child support made effective as of September 1, 2007, the assessment of post-judgment interest, and the award of attorney's fees.

Based on the foregoing analysis, we reverse the trial court's final modification order and render judgment that the petition to modify is denied.

Phylis J. Speedlin, Justice