

# IN THE
# TENTH COURT OF APPEALS

### No. 10-09-00136-CV

## IN THE MATTER OF THE MARRIAGE OF
## JANET LYNNE HERNANDEZ AND DAVID LIGHTFOOT
## HERNANDEZ,

**From the 52nd District Court**
**Coryell County, Texas**
**Trial Court No. CD-08-38547**

## MEMORANDUM OPINION

Appellant, David Lightfoot Hernandez, challenges several orders entered by the trial court in this divorce matter. In four issues, David, who has appeared pro se in trial and on appeal, contends that the trial court: (1) abused its discretion by dividing the marital estate disproportionately in favor of appellee, Janet Lynne Hernandez, especially in light of Janet's alleged "wrongful disposition" of the marital assets; (2) engaged in improper ex parte communications by conducting a hearing on Janet's request for a temporary restraining order without affording David with notice of the hearing; (3) abused its discretion in granting Janet's request for a temporary injunction without notifying David of the hearing; and (4) abused its discretion in refusing to

consider his allegations that Janet engaged in forgery and fraud when dividing the marital estate. We will affirm.

Janet and David were married on or about September 9, 1994, while David was incarcerated for aggravated sexual assault and aggravated burglary of a habitation. David was released from prison and placed on parole in 2002. After his release from prison, David and Janet opened a business selling computer and lawn-care equipment. The business, named "A to Z Cooled Equipment and Computer Diagnostics Center," was set up in David's name as a sole proprietorship, and Janet testified that she and David used the business's income to live. She specifically mentioned that their personal vehicles and the business inventory and equipment were purchased with business income and that she and David lived with her mother.

In April 2007, David's parole was revoked for various parole violations, including failing to participate in required sex offender treatment classes and for using the internet to contact a woman, with whom he later had sexual relations.[1] David was returned to prison to serve the remainder of his forty-year prison sentence.

According to Janet, while he was in prison, David gave her a power of attorney to allow her to run the business in his absence, a fact that David later admitted in his "counter-petition for divorce." In the trial court, however, David disputed whether the executed power of attorney was, in fact, valid. He alleged that his social security number was written on the document and that the document was notarized without his

---

[1] In particular, Janet tendered Petitioner's Exhibit 1, which was a waiver processing sheet from the Texas Department of Criminal Justice—Parole Division (TDCJ) and in which the TDCJ noted that "Offender [David] admitted to having access to 'MySpace.com' on the internet and meeting a woman there and having sexual relations. Offender has failed last 4 polygraphs as well for not disclosing rules violations."

consent. David complained that the notary public who signed the document indicated that David produced identification to her when the document was signed even though David was incarcerated at the time. Nevertheless, the document contained the following language that David admitted to have written: "I, David Lightfoot Hernandez, TDCJ-ID #458230, being presently incarcerated in the Coryell County Jail in Coryell County, Texas, declared under penalty of perjury that the foregoing is true and correct. Executed on May 1, 2007."

Regardless of the validity of the power of attorney, Janet ran the business in David's absence, an effort that failed for a number of reasons. Janet testified that half of the business income came from the repair and sale of computers, which was solely the expertise of David. The remainder of the business involved the selling of lawn-care equipment. Because of a severe drought and high-interest financing associated with inventory that had not been sold, the lawn-care equipment portion of the business ceased to be profitable. In an attempt to revive the business, Janet liquidated a separate-property mutual fund that she had and used the $45,000 in proceeds for the business. She also sold several vehicles and power equipment that were used for the business to try to keep the business running. Janet also arranged for the exchange of "now-useless computer parts" for the labor of a technician so that she could avoid having to pay the technician in cash. None of Janet's efforts were enough to save the business.

In the fall of 2008, because Janet was unable to keep up with the interest payments, a secured creditor repossessed the business's inventory. The bank subsequently foreclosed on the building used for the business and the sole remaining

business account that allegedly had a small amount of money left in it. According to a 2007 tax return jointly filed by David and Janet, the business, in its last year of operation, lost more than $74,000.

On October 21, 2008, Janet filed her original petition for divorce, which included, among others, a request for a temporary restraining order. The trial court subsequently granted Janet an ex parte temporary restraining order. David filed an answer to Janet's divorce petition and a "counter-petition for divorce," both of which the trial court deemed as David's answer to Janet's suit.[2] On March 26, 2009, the trial court conducted a final hearing on Janet's divorce petition. David participated in the hearing by teleconference. At the conclusion of the hearing, the trial court, ostensibly concluding that the marital estate had no community property, awarded the parties their separate property and any property they had in their possession. This appeal followed.

In his first issue, David contends that the trial court abused its discretion in dividing the marital estate. In particular, David complains that Janet wrongfully disposed of community assets while he was incarcerated and effectuated a fraud on the community.

We review a trial court's division of property under an abuse of discretion standard. *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981). A trial court has wide latitude in the exercise of its discretion in dividing the marital property in a divorce proceeding, and that division will not be overturned on appeal unless the trial court has

---

[2] The trial court construed David's "counter-petition for divorce" as an answer because David failed to pay the corresponding fee for the filing.

abused its discretion. *Id.*; *see Zieba v. Martin*, 928 S.W.2d 782, 786 (Tex. App.—Houston [14th Dist.] 1996, no writ); *Dankowski v. Dankowski*, 922 S.W.2d 298, 304 (Tex. App.—Fort Worth 1996, no writ). The mere fact that a trial judge may decide a matter within his discretionary authority differently than an appellate judge is not an abuse of discretion. *Jones v. Jones*, 804 S.W.2d 623, 624 (Tex. App.—Texarkana 1991, no writ) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985)). To constitute an abuse of discretion, the trial court's division of the property must be manifestly unfair. *Mann v. Mann*, 607 S.W.2d 243, 245 (Tex. 1980); *see Vandiver v. Vandiver*, 4 S.W.3d 300, 303-04 (Tex. App.—Corpus Christi 1999, pet. denied).

Section 7.001 of the family code provides that the trial court shall, in its divorce decree, order a division of the marital estate in a manner that it deems just and right. TEX. FAM. CODE ANN. § 7.001 (Vernon 2006). The trial court is not required to divide the marital estate equally; however, its division must be equitable. *Zieba*, 928 S.W.2d at 790. "The trial court's discretion is not unlimited, and there must be some reasonable basis for an unequal division of the property." *O'Carolan v. Hopper*, 71 S.W.3d 529, 532 (Tex. App.—Austin 2002, no pet.). In deciding whether a reasonable basis exists for an unequal division of the marital estate, the trial court may consider "such factors as the spouses' capacities and abilities, benefits which the party not at fault would have derived from continuation of the marriage, business opportunities, education, relative physical conditions, relative financial condition and obligations, disparity of ages, size of separate estates, and the nature of the property." *Murff*, 615 S.W.2d at 699.

Moreover, because the trial court is in a better position to determine the candor,

demeanor, and credibility of the witnesses, we will not substitute our judgment for that of the trial court. *See Garner v. Garner*, 200 S.W.3d 303, 308 (Tex. App.—Dallas 2006, no pet.), *overruled on other grounds by Iliff v. Iliff,* 339 S.W.3d 74 (Tex. 2011); *see also In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (noting that trial court is best able to observe and assess witnesses' demeanor and credibility and to sense "forces, powers, and influences" that may not be apparent merely from reading the record on appeal). Instead, we defer to the trial court's resolution of underlying facts and to the credibility determinations that may have affected its decision. *In re A.L.E.*, 279 S.W.3d at 427. Thus, an abuse of discretion will generally not occur when a trial court bases its discretion on conflicting evidence. *In re De La Pena*, 999 S.W.2d 521, 526 (Tex. App.—El Paso 1999, no pet.).

In the instant case, David asserts that Janet improperly disposed of community assets and, thus, committed a fraud on the community estate. "Texas recognizes the concept of fraud on the community, which is a wrong by one spouse that the court may consider in its division of the estate of the parties and that may justify an unequal division of the property." *Schlueter v. Schlueter*, 975 S.W.2d 584, 588 (Tex. 1998).

> [A] claim of fraud on the community is a means to an end, either to recover specific property wrongfully conveyed . . . or . . . to obtain a greater share of the community estate upon divorce, in order to compensate the wronged spouse for his or her lost interest in the community estate.

*Id.* In making a just and right division of the marital estate, the trial court may consider, among other things, the wasting of community assets. *Id.*; *see Murff*, 615 S.W.2d at 698-99.

At the final hearing, Janet admitted to selling some vehicles, equipment, and inventory to keep the business running. However, Janet acknowledged that she failed in trying to keep the business open. The inventory was repossessed, and the building was foreclosed upon by the bank. As a result, Janet stated that, "Yes, it's all gone. I'm broke." In his pleadings, David listed a number of vehicles and equipment as part of the community estate and alleged that Janet improperly sold the items without his consent. Janet, on the other hand, testified that the equipment and vehicles that David listed were never owned by the couple, were sold to further their business, or were a part of their separate property. To refute this testimony, David Bollard, a friend and past customer of David's, recalled seeing all of the vehicles and equipment that David listed in his pleadings. The trial court, however, concluded that the couple did not have any community property to divide; thus, it clearly believed the testimony of Janet and rejected the testimony of David and Bollard. *See Garner*, 200 S.W.3d at 308; *see also In re A.L.E.*, 279 S.W.3d at 427. Because Janet's testimony constitutes some evidence that there were no community assets to divide and because we must defer to the trial court's resolution of underlying facts and to the credibility determinations that may have affected its decision, we cannot say that the trial court abused its discretion in dividing the marital estate.[3] *See In re A.L.E.*, 279 S.W.3d at 427; *see also Murff*, 615 S.W.2d at 698.

---

[3] We also note that David failed to present any evidence to the trial court regarding the contents and value of the community estate. He made numerous vague assertions regarding property that may or may not have been included in the community estate. On appeal, David attached numerous exhibits documenting what he thinks was contained in the community estate and how much he believed it to be worth. These exhibits, however, were not included in the appellate record and thus cannot be considered in this appeal. *See Gonzalez v. Villarreal*, 251 S.W.3d 763, 777 n.17 (Tex. App.—Corpus Christi 2008, pet. dism'd w.o.j.) (holding that attachment of documents as exhibits or appendices to appellate briefs is not

David also complains that the power of attorney that was executed was invalid because it was forged. Thus, according to David, Janet was not authorized to dispose of the community assets to run the business. However, Janet refuted David's allegations about the power of attorney by testifying that David instructed her to run the business—a fact that David admitted in his "counter-petition for divorce"—and that the power of attorney was valid. The trial court did sustain David's objection to the admission of the power of attorney on authentication grounds, but in concluding that the marital estate did not contain any community assets and awarding the parties their separate property, the trial court, in effect, rejected David's complaint and concluded that Janet was authorized to run the business for the benefit of the community estate. *See Garner*, 200 S.W.3d at 308; *see also In re A.L.E.*, 279 S.W.3d at 427. Based on the foregoing, we cannot say that David has demonstrated that a fraud on the community occurred or that the trial court abused its discretion in dividing the marital estate. *See Schlueter*, 975 S.W.2d at 588; *see also Murff*, 615 S.W.2d at 698. We overrule David's first issue.

In his second issue, David contends that the trial judge engaged in improper ex parte communications by holding a hearing on Janet's request for a temporary restraining order without affording him with notice or an opportunity to participate in the hearing. We first note that Texas law "prohibits an appeal from a temporary restraining order." *Ex parte Tucci*, 859 S.W.2d 1, 2-3 n.4 (Tex. 1993); *see In re Office of the*

---

formal inclusion in appellate record); *Till v. Thomas*, 10 S.W.3d 730, 733-34 (Tex. App.—Houston [1st Dist.] 1999, no pet.) ("We cannot consider documents attached to an appellate brief that do not appear in the record.").

*Attorney Gen.*, 257 S.W.3d 695, 698 (Tex. 2008). And, perhaps more importantly, any complaint regarding the alleged ex parte restraining order is moot because the marital estate has been divided, the divorce decree is final, and the complained-of order has expired under its own terms. *See Hermann Hosp. v. Tran*, 730 S.W.2d 56, 57 (Tex. App.—Houston [14th Dist.] 1987, no writ) (holding that expiration of temporary restraining order renders its challenge moot); *see also Andrews v. Smith*, No. 03-01-00402-CV, 2002 Tex. App. LEXIS 3642, at *15 (Tex. App.—Austin May 23, 2002, pet. dism'd w.o.j.) (op. on reh'g) ("This challenge is moot because the temporary restraining order is no longer in effect."). Accordingly, we overrule David's second issue.

In his third issue, David complains that the trial court abused its discretion in granting a temporary injunction in favor of Janet because he neither received notice nor was afforded the opportunity to participate in the hearing. A review of the record indicates that the trial court did not grant a temporary injunction in favor of Janet. Instead, the trial court granted Janet an ex parte temporary restraining order and authorized one extension of it because Janet had difficulty in serving David because the prisons were on lockdown pursuant to an order from the Governor.

To the extent that David is arguing that the temporary restraining order ostensibly became an injunction because the extension caused the temporary restraining order to expire much later than fourteen days after it was originally granted, we point out that Texas Rule of Civil Procedure 680 affords the trial court with discretion to grant at least one extension for good cause. TEX. R. CIV. P. 680. And furthermore, even if we were to construe the temporary restraining order as a temporary injunction, any

complaint associated with the order is moot considering that the trial court entered a final divorce decree dividing the marital estate and the terms of the order have expired. *See Faddoul v. Oaxaca*, 52 S.W.3d 209, 212 (Tex. App.—El Paso 2001, no pet.) ("A temporary injunction becomes moot when it becomes inoperative due to a change in status of the parties or the passage of time, or because it has expired."). If the complained-of order was, indeed, an injunction, then it was incumbent upon David to file an interlocutory appeal challenging the propriety of the order. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(4) (Vernon 2008). He did not do so in this case. Thus, we overrule his third issue.

In his fourth issue, David argues that the trial court abused its discretion "in refusing to consider the independent tort[s] of forgery and fraud . . . when disposing of the marital assets which caused appellant injury independent of fraud on the community." In asserting this issue, David fails to demonstrate that this claim was clearly pleaded in the trial court. He also fails to distinguish the "independent tort[s] of forgery and fraud" from his prior fraud on the community contention. In fact, the contentions he makes in this issue are substantially similar to those made to support his fraud on the community argument, which we previously rejected. Moreover, in support of his allegations of forgery and fraud, David does not direct us to portions of the appellate record demonstrating that Janet engaged in the complained-of tortious behavior. Instead, he directs us to portions of Janet's testimony, which David characterizes as lies, his own bare assertions, and evidence he attached to his appellate brief. As we have previously noted, we cannot consider evidence attached to an

appellate brief that has not been formally included in the record. *See Gonzalez v. Villarreal*, 251 S.W.3d 763, 777 n.17 (Tex. App.—Corpus Christi 2008, pet. dism'd w.o.j.); *Till v. Thomas*, 10 S.W.3d 730, 733-34 (Tex. App.—Houston [1st Dist.] 1999, no pet.). Moreover, David testified about these allegations, yet, in concluding that David was entitled only to his separate property, the trial court apparently chose to disbelieve David's testimony, which it was authorized to do. *See Garner*, 200 S.W.3d at 308; *see also In re A.L.E.*, 279 S.W.3d at 427.

Because the only record evidence supporting David's complaint is the testimony of witnesses and because the resolution of David's allegations of forgery and fraud depended on the candor, demeanor, and credibility of the witnesses, we defer to the trial court's resolution of this complaint. *See Garner*, 200 S.W.3d at 308; *see also In re A.L.E.*, 279 S.W.3d at 427. Further, David has not directed us to record evidence that demonstrates that the trial court's rejection of this complaint and subsequent division of the marital estate constituted an abuse of discretion. *See Murff*, 615 S.W.2d at 698. We, therefore, overrule David's fourth issue.

Having overruled all of David's issues, we affirm the judgment of the trial court.


REX D. DAVIS
Justice

Before Chief Justice Gray,
    Justice Davis, and
    Justice Scoggins
Affirmed
Opinion delivered and filed August 10, 2011
[CV06]