**In the Interest of J.D.D., B.J.D., and W.G.D., Minor Children.**

No. 05–06–00463–CV.

Court of Appeals of Texas, Dallas.

Jan. 8, 2008.

Craig A. Jackson, Irving, TX, for Appellant.

Barbara Deltuva, Plano, TX, pro se.

Before Chief Justice THOMAS and Justices LANG and MAZZANT.

## OPINION

Opinion by Chief Justice THOMAS.

John Deltuva (Father) challenges the trial court's denial of his petition to modify the parent-child relationship requesting a reduction in the amount of Father's child support obligation. We affirm the trial court's order.

### Procedural Background

On February 18, 2002, the trial court signed the final divorce decree for Barbara Deltuva and Father, ordering Father to

pay $1,800 per month in child support for the parties' three children. The amount of Father's child support obligation was based on the jury's finding Father was capable of earning $125,000 per year. Father appealed contending, among other issues, that the trial court erred in requiring him to pay a fixed amount of child support regardless of the number of children he was supporting. We agreed with Father and remanded the child support issue to the trial court to provide for a reduction in child support in accordance with the child support guidelines as Father's obligation to support each child terminated. *Deltuva v. Deltuva*, 113 S.W.3d 882, 887 (Tex.App.-Dallas 2003, no pet.) (op. on reh'g). We ruled against Father on his contention the trial court abused its discretion in setting the amount of Father's child support obligation based on the jury's finding Father was capable of earning $125,000 per year. *Id.* at 886.

Although not in the record, Father filed a petition to modify after remand seeking to reduce his child support obligation. On November 10, 2004, the trial court entered an interlocutory order that reduced Father's child support obligation to $1,500 per month once he was no longer required to support one child and to $1,200 per month after he was no longer obligated to support a second child.[1] The trial court also found Father's incarceration from July 1, 2003 through February 12, 2004 was a material and substantial change of circumstances since the rendition of the divorce decree. Because Father was not capable of paying the ordered child support during his incarceration, the trial court reduced Father's child support obligation to $300 per month for the period of incarceration. In a final order also entered on November 10, 2004, the trial court denied Father's petition, except as set out in the interlocutory order, and ordered the interlocutory order would remain in full force and effect.

On August 4, 2005, Father filed the petition to modify the parent-child relationship at issue in this appeal, again seeking to reduce the amount of Father's child support obligation. At the November 15, 2005 hearing on the petition, Father contended his unemployment constituted a material and substantial change in his circumstances justifying a reduction in his child support obligation.

## Factual Background

Father, an optician, owned an optical business for twenty-three years during the marriage. However, following the divorce, Father failed to timely make all ordered child support payments and, on July 1, 2003, was held in contempt of court and confined in the Collin County Jail until February 12, 2004. After his release, Father failed to return the optical business to profitability and closed the business in October 2004. Father then moved to his mother's apartment in a retirement community, but did not pay his mother rent. Father was still living with his mother in November 2005.

Father was unemployed until May 2005, when he began working at a Vision City optical shop making $14.00 per hour. In July 2005, the trial court signed a judgment setting a payment schedule of approximately $350 per month for Father's child support arrearage of $45,300 and spousal maintenance arrearage.[2]

---

1. Although signed on November 10, 2004, the trial court noted on the interlocutory order that it rendered judgment in court on September 16, 2004.

2. This judgment is not in the record. However, Father testified to the existence of the judgment, the amount of the child support arrearage, and the approximate amount of the

Father was indicted for criminal nonsupport due to Father's failure to pay child support. *See* Tex. Pen.Code Ann. § 25.05(a) (Vernon 2003). Father's criminal trial began on July 25, 2005 and, on July 26, 2005, Father was found guilty of the offense and sentenced to two years' confinement probated for five years. Father was ordered as a condition of probation to immediately pay $5,000 of the back child support to the Child Support Disbursement Unit. Father timely made the ordered payment, but the record does not reflect the source of those funds.[3]

Father failed to return to work at Vision City following the criminal trial. Father testified he had a nervous breakdown following the criminal proceedings, but also stated on cross-examination that his income from Vision City was insufficient to make the ordered child support payments and the payments on the arrearages. Father's employment records from Vision City indicated Father did not report to work on July 25, July 26, July 27, and July 28, 2005 and did not return telephone calls. Across the top of Vision City's records of Father's employment is written "Job abandonment 7/28/05."

Father testified he reported less than $10,000 in income on his 2004 tax return and had earned less than $6,000 in 2005, all from his work at Vision City. Father denied he was intentionally unemployed in order to avoid paying child support and introduced eight job applications he completed, beginning on July 28, 2005 and continuing through November 7, 2005, seeking jobs that paid from $8.00 to $18.00 per hour. Father testified he received none of the positions and his bankruptcy and felony conviction made it impossible for him to pass a background check in order to obtain employment.

Father has stored property from his optical business at a storage facility since he closed the business in October 2004, and Father's mother has paid the monthly storage costs of $230. In addition to the business property, Father owns a BMW automobile and personal property. Father has not considered selling the property in storage or the automobile and has not attempted to obtain a loan in order to make his child support payments.

Father's mother has paid thousands of dollars in legal fees incurred by Father in seeking to have his child support obligation reduced in order, according to Father, "to get justice, to have the child support based on actual earnings per Texas family law" and to defend and appeal the criminal proceedings. Father testified his legal fees were an "astronomical burden" on his mother. However, Father has not asked his mother to assist him with his child support payments.

The trial court denied the petition and Father appealed.

### Standard of Review

■ The trial court has broad discretion in setting or modifying child support payments, and we will reverse the order only if it appears from the record as a whole that the trial court abused its discretion.

---

monthly payment required by the judgment. The amount of the spousal maintenance arrearage is not in the record.

3. Father testified the $5,000 payment was for future support and he was current on his child support payments at the time of the hearing. However, the conditions of probation reflect the payment was toward the child support arrearage and the Attorney General Office's records introduced at the hearing showed Father last made a child support payment on August 26, 2005. Accordingly, Father was not current on his child support payments at the time of the modification hearing.

*Garner v. Garner,* 200 S.W.3d 303, 306 (Tex.App.-Dallas 2006, no pet.); *In re P.J.H.,* 25 S.W.3d 402, 405 (Tex.App.-Fort Worth 2000, no pet.). A trial court abuses its discretion when it acts in an arbitrary and unreasonable manner or when it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex. 1985); *Garner,* 200 S.W.3d at 306.

Under the abuse of discretion standard, legal and factual sufficiency of the evidence are not independent grounds for asserting error, but are relevant in assessing whether the court abused its discretion. *Garner,* 200 S.W.3d at 306; *Niskar v. Niskar,* 136 S.W.3d 749, 753 (Tex. App.-Dallas 2004, no pet.). We review the evidence in the light most favorable to the order and indulge every presumption in favor of the trial court's ruling. *Garner,* 200 S.W.3d at 306. If some probative and substantive evidence supports the order, there is no abuse of discretion. *Id.* Because there are no findings of fact or conclusions of law, the trial court's order must be upheld on any legal theory that finds support in the evidence. *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990) (per curiam); *Treadway v. Shanks,* 110 S.W.3d 1, 5 (Tex.App.-Dallas 2000), *aff'd,* 110 S.W.3d 444 (Tex.2003).

### Modification of Child Support

#### A. Section 156.402(a)(1)

##### 1. *Material and Substantial Change*

The trial court may modify a previous child support order if "the circumstances of the child or a person affected by the order have materially and substantially changed" since the date of the order's rendition. Act of May 29, 2005, 79th Leg., R.S., ch. 916, § 19, 2005 Tex. Gen. Laws 3148, 3154 (amended 2007) (current version at TEX. FAM.CODE ANN. § 156.401(a)(1)

(Vernon Supp.2007)). As the movant, Father had the burden to show the requisite material and substantial change in circumstances since the entry of the previous order. *Cameron v. Cameron,* 158 S.W.3d 680, 682 (Tex.App.-Dallas 2005, pet. denied).

Father contends the trial court abused its discretion in denying the petition to modify because the undisputed evidence at the hearing demonstrated a material and substantial change in Father's circumstances between when the divorce decree was entered and the date of the hearing. However, Father's petition sought to modify the interlocutory order entered by the trial court on November 10, 2004. At the hearing on November 15, 2005, Father's counsel stated Father was requesting the trial court "modify a final order in suit to modify parent-child relationship which was signed by this Honorable Court on November 10, 2004." Father's counsel also objected to the cross-examination of Father about his circumstances at the time of the divorce, "Your Honor, she's talking about the divorce. I'm going to object. Are we talking about November, 2004?" Finally, the trial court understood the focus of Father's petition to be the November 10, 2004 order, stating to Father at the conclusion of the hearing:

> Your position today is not different from what it was a year ago, or when this order was set. You were underemployed then; you're underemployed now. Not employed by choice now. Yes, you may be seeking employment for $100,000.00 or even 75,000 or now even $50,000, but you had a job and you quit it.

On appeal, a party may not enlarge a ground of error or an argument to include a claim not raised before the trial court. *In re E.A.C.,* 162 S.W.3d 438, 445 (Tex.App.-Dallas 2005, no pet.); *In re*

*Lendman,* 170 S.W.3d 894, 898 (Tex.App.-Texarkana 2005, no pet.) ("It is improper to present a new issue on appeal or to expand on the issue that was presented to the trial court."). Accordingly, Father may not now rely on any alleged material and substantial change in his circumstances between the date of the divorce decree and the date of the requested modification. Rather, as was presented to the trial court, we will consider whether Father established a material and substantial change in circumstances between November 10, 2004, the date of the prior modification, and November 15, 2005, the date of the hearing on the current modification request. *See In re J.R.D.,* 169 S.W.3d 740, 743–44 (Tex.App.-Austin 2005, pet. denied) (comparing circumstances at time of hearing to those at the rendition of last modification order).

■ In November 2004, Father had closed his optical dispensing business and was unemployed. In November 2005, Father had abandoned his job with Vision City and was unemployed. The trial court did not abuse its discretion in finding there had been no material and substantial change in Father's circumstances. *See Swate v. Crook,* 991 S.W.2d 450, 454 (Tex. App.-Houston [1st Dist.] 1999, pet. denied) ("That the father was unemployed also does not warrant the conclusion that he had a material and substantial change in circumstances, because the father was also unemployed at the time of the 1993 order."), *abrogated on other grounds by Smith v. Brown,* 51 S.W.3d 376, 381 (Tex. App.-Houston [1st Dist.] 2001, pet. denied).

*2. Intentional Unemployment or Underemployment*

■ Father also contends the trial court abused its discretion in denying the petition to modify based on a finding Father was intentionally unemployed. Father argues there was no evidence he reduced his income for purposes of avoiding paying child support and no evidence to support the trial court's finding his earning potential was sufficient to calculate Father's net resources at $6,000 per month. However, this is not a case in which the trial court was making an initial determination that Father was intentionally unemployed. Rather, Father, as the movant, had the burden to establish a material and substantial change in his employment status and earning potential since November 10, 2004 in order to support a finding he was no longer intentionally unemployed or was no longer capable of earning $125,000 per year. *See Cameron,* 158 S.W.3d at 682 ("As movant, it was appellant's burden to show the requisite material and substantial change in circumstances since the entry of the previous order.").

Father closed his optical business in October 2004 and was unemployed until May 2005 when he began working at Vision City. He testified he lost his job at Vision City in July 2005 due to illness, he was currently unemployed, and his bankruptcy and criminal conviction made it impossible for him to pass a background check and obtain employment. However, according to Vision City's records, Father abandoned his job on July 28, 2005, shortly after the trial court entered a judgment ordering Father to pay over $45,000 in child support arrearages on a set schedule and immediately after Father was convicted of criminal nonsupport. There was no evidence Vision City would have terminated Father's employment due to the criminal conviction. Further, despite his claims of illness, Father completed a job application with a different potential employer on July 28, 2005, the same day Vision City noted he had abandoned his job. The trial court could have reasonably concluded Father failed to establish he was no longer intentionally unemployed.

As to whether there had been a material and substantial change in Father's earning capacity since the entry of the prior order, Father testified he was currently unemployed and that his bankruptcy and his criminal conviction prevented him from passing a background check in order to obtain employment. However, as noted above, Father abandoned his job at Vision City after his conviction, directly contributing to Father's alleged current difficulty in finding employment.

Further, Father's duty to pay support is not limited to his ability to pay from current earnings, but also extends to his ability to pay from any and all sources that might be available. Act of Apr. 6, 1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex. Gen. Laws 113, 160 (amended 2007) (current version at TEX. FAM.CODE ANN. § 154.062 (Vernon Supp.2007)); *Garner*, 200 S.W.3d at 306, 308. Father lived with his mother from November 2004 through November 2005 without paying any rent. Father's mother paid the monthly charges to store Father's property. There was no evidence Father had any personal monthly expenses he was responsible for paying. Father has not attempted to sell either his business or personal property and has not attempted to obtain a loan to meet his child support obligations. Rather, he has allowed his mother to pay thousands of dollars in legal fees for his attempts to have the child support obligation based on "actual earnings," to defend the criminal charges based on his failure to pay his child support, and to appeal his conviction on the charges. Although the record does not reflect the source of the funds, Father was able to timely pay the $5,000 of back child support required as a condition of his probation in the criminal proceedings.

It was Father's burden to establish a material and substantial change in his circumstances since November 10, 2004, that impacted the prior determinations he was intentionally unemployed or underemployed and that he was capable of earning $125,000 per year. The trial court was the judge of Father's credibility and was not required to accept Father's testimony about the reasons for his unemployment, his income, and his net resources as true. *Garner*, 200 S.W.3d at 308. Because the trial court was in a better position to determine the candor, demeanor, and credibility of the witnesses, we will not substitute our judgment for that of the trial court. *Id.* After reviewing the entire record, we cannot say the trial court abused its discretion in finding Father failed to carry his burden to prove a material and substantial change in his circumstances.

## B. Section 156.402(a)(2)

 Father also contends the trial court abused its discretion in denying the petition because it has been three years since the child support order was rendered or last modified and the monthly amount of the child support award under the order differs by either 20 percent or $100 from the amount that would be awarded in accordance with the child support guidelines. *See* Act of May 29, 2005, 79th Leg., R.S., ch. 916, § 19, 2005 Tex. Gen. Laws 3148, 3154 (amended 2007) (current version at TEX. FAM.CODE ANN. § 156.401(a)(2) (Vernon Supp.2007)). Father did not include this ground for modification in his petition and did not raise it during the hearing before the trial court. Accordingly, we will not consider it on appeal. TEX.R.APP. P. 33.1(a); *see Cameron*, 158 S.W.3d at 684 (by failing to present complaint to trial court, father waived argument that ordered child support was so high it did not permit him to pay necessary living expenses).

### Conclusion

The trial court did not abuse its discretion in concluding there had not been a

material and substantial change in Father's circumstances that justified a reduction in Father's child support obligation. Therefore, we affirm the trial court's order.