**AFFIRM; and Opinion Filed August 21, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-01645-CV

## IN THE INTEREST OF T.L.D. A CHILD

**On Appeal from the 255th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF07-18708-S**

## MEMORANDUM OPINION

Before Justices Moseley, O'Neill, and FitzGerald
Opinion by Justice O'Neill

Father appeals the trial court's order, denying his request to modify the amount of his child support obligation. In a single issue, Father contends the trial court abused its discretion in denying his motion to modify. We affirm.

In October 2007, Father filed a petition, seeking genetic testing to determine parentage and seeking to be appointed the sole managing conservator of T.L.D. In an order dated January 5, 2010, the trial court confirmed Father as the biological father of T.L.D., appointed Mother and Father joint managing conservators of the child and, after finding Father owed $36,400 in retroactive child support for the period between October 27, 2005 and October 27, 2009, ordered him to pay $800 a month in current child support as well as $200 a month in retroactive child support. The order also stated:

> The Court finds that [Father] is voluntarily unemployed and has access to resources that can be used for the support of the child. After hearing the evidence and the argument of the parties, the Court finds that the amount of child support

<u>ordered is a reasonable amount. The Court finds that [Father] has the capability to pay the child support ordered by the Court.</u>

On August 2, 2011, Father filed a petition to modify the parent-child relationship in which he alleged material and substantial changes had occurred since the rendition of the previous order and that the support payments "should be drastically decreased." Specifically, Father asserted he had undergone six knee surgeries with a seventh one scheduled and that he suffered from shoulder, knee, and back injuries "dramatically limiting [his] abilities." On October 20, 2011, the associate judge temporarily reduced Father's monthly obligation from $800 to $260, pending a hearing on Father's petition to modify. Thereafter, the issue was tried before the associate judge who denied Father's petition, ordered monthly child support payments reinstated at $800, confirmed a child support arrearage of $49,165.25, and ordered Father to pay $200 a month toward the arrearage total.

Father appealed to the district court. On September 19, 2012, after an evidentiary hearing, the trial court confirmed the associate judge's ruling and terminated the temporary orders effective April 2, 2012. After Father filed a motion for rehearing, the trial court signed an amended order that, again, ordered monthly child support payments reinstated at $800, confirmed an arrearage of $49,165.25, and ordered Father to pay $200 a month toward the arrearage total. This appeal followed.

In his sole issue on appeal, Father contends the trial court abused its discretion by denying his request for reduced child support payments. A trial court has discretion to set child support within the parameters set by the Texas Family Code. *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011); *see also* TEX. FAM. CODE ANN. §§ 154.121–.126 (West 2014). We will not disturb a trial court's order of child support on appeal unless the complaining party can show a clear abuse of discretion. *Iliff*, 339 S.W.3d at 78. A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to guiding rules or principles. *Worford v. Stamper*,

801 S.W.2d 108, 109 (Tex. 1990) (per curiam); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). A trial court also abuses its discretion by failing to analyze or apply the law correctly. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).

Under the abuse of discretion standard, legal and factual insufficiency issues are not independent grounds of error but are relevant in assessing whether the trial court abused its discretion. *In re A.M.W.*, 313 S.W.3d 887, 890 (Tex. App.—Dallas 2010, no pet.); *In re J.D.D.*, 242 S.W.3d 916, 920 (Tex. App.—Dallas 2008, pet. denied). We review the evidence in the light most favorable to the order and indulge every presumption in favor of the trial court's ruling. *J.D.D.*, 242 S.W.3d at 920. If some probative and substantive evidence supports the order, there is no abuse of discretion. *A.M.W.*, 313 S.W.3d at 890. Because there are no findings of fact or conclusions of law, the trial court's order must be upheld on any legal theory that finds support in the evidence. *Worford*, 801 S.W.2d at 109; *J.D.D.*, 242 S.W.3d at 920.

A trial court may modify a previous child support order if "the circumstances of the child or a person affected by the order have materially and substantially changed" since the date of the order's rendition. TEX. FAM. CODE ANN. § 156.401(a)(1) (West 2014). In determining whether there has been a material and substantial change in circumstances, the trial court must examine and compare the circumstances of the parents and any minor children at the time of the initial order with the circumstances existing at the time modification is sought. *In re C.C.J.*, 244 S.W.3d 911, 917 (Tex. App.—Dallas 2008, no pet.). As the movant, Father had the burden to show the requisite material and substantial change in circumstances since the entry of the previous order. *Id*. at 918.

At the May 9, 2012 appeal of the associate judge's ruling on the petition for modification, Dr. Ronnie Shade, Father's orthopedic surgeon,[1] testified he had seen Father three times in the year preceding the hearing. Father has arthritis, and Shade ordered MRI scans on Father's cervical and lumbar spine as well as his shoulders. He also had arthrograms run on Father's knees and right ankle. According to Shade, Father "would be markedly limited with activities which require lifting, reaching, overhead work, pushing, pulling, those types of things." The doctor also opined Father would have difficulty or problems with "standing, walking, climbing stairs, [going] up and down stairs [as well as problems] with his back with prolonged sitting." Shade recommended Father have surgery on his right knee immediately to clean it out and decrease some of the pain before having a total knee replacement. He also believed Father would qualify as disabled if he applied; Shade based his professional opinion, in part, on the social security evaluations he personally had performed on other patients. Shade conceded that Father, a minister, had not claimed his health problems were affecting his ability to be a minister and that Father should lose weight and do therapy. Shade testified Father informed him that he played football in the past and had "multiple injuries at that time." Shade did not testify whether Father had previous surgeries.

Father said he filed the petition because his financial situation had changed tremendously. In April 2010, he made about $300 a week from the church. He had other sources of income, such as weddings, speaking engagements, and funerals, and he received approximately $200 to $300 from his wife. Father testified his wife paid for T.L.D.'s insurance. He said he and his wife had since separated and were "going through" a divorce. He said his wife was seeking the divorce because of the child support situation. He however acknowledged that he did not know whether she had yet filed.

---

[1] Father testified he met Dr. Shade years ago when he played football.

According to Father, the church membership dropped from fifty to sixty members to about fifteen. As a result, he now has to pay $50 for his cell phone; however, he is still paid $300 a week by the church. He also said he has begun the process to qualify for disability. According to Father, he has no assets and owns nothing he could sell to pay child support. He lives at the church and does not own a car or truck. He said the boat he uses is also owned by the church. Although he was drafted to play professional football, Father said he is no longer able to play sports, including racquetball. He does go to a gym to use the Jacuzzi for his knees. Father estimated his income was "about $32,000 in 2010," and that his total income for 2012 to date was "[a]bout seventeen [thousand]." He testified his income in 2012 included income he received from a marketing job he briefly had at AAA Trailers. He said he was terminated from that job when he was arrested for failing to pay child support.

Mother testified that, despite Father's testimony, she saw him at a fitness gym playing racquetball, in addition to lifting weights and using machines in the months prior to the hearing. She claimed he had not exercised his visitation rights since October 2011 but said she did not deny him visitation. She conceded she had a cell phone that could take pictures but said she did not take her cell phone to the gym.

After reviewing the record, we cannot say the trial court abused its discretion in denying Father's motion to modify. Initially, we note that the trial court's initial support determination was not based on Father's actual income, but on its determination that Father was intentionally unemployed. On appeal, Father does not assert a change of circumstances exists with respect to that issue.[2]

---

[2] In a footnote, Father does assert, with no legal analysis or citations to the record, that it is "arguable" he also carried the burden on intentional underemployment. This footnote presents nothing to review. *See*, Tex. R. App. P. 38.1(f), (h), (i).

Regardless, we cannot conclude Father showed his financial circumstances had materially and substantially changed. The evidence showed Father had arthritis which had progressed to a point that Father experienced pain while walking, standing, and performing other routine tasks. The record also shows Father did not complain or otherwise testify that his arthritis affected his ability to be a minister. Father testified he earned $300 a week in 2010 when he was initially ordered to pay $800 in child support and that he still earned $300 a week at the time he requested the modification. Although Father claimed the church had fewer members in 2012 and his income had decreased as a result, he testified he earned $32,000 in 2010 and $17,000 in the first five months of 2012. The trial court could have reasonably concluded, based on Father's testimony, that he was still earning approximately the same amount as he had in 2010 even though church membership had decreased. On these facts, we cannot conclude the trial court abused its discretion in denying Father's motion to modify. We overrule Father's sole issue.

We affirm the trial court's order.

/Michael J. O'Neill/
MICHAEL J. O'NEILL
JUSTICE

121645F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

IN THE INTEREST OF T.L.D. A CHILD,
Appellant

No. 05-12-01645-CV     V.

On Appeal from the 255th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. 0718708S.
Opinion delivered by Justice O'Neill.
Justices Moseley and FitzGerald
participating.


       In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.


Judgment entered this 21st day of August, 2014.