# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-24-00609-CV

---

**In the Interest of S. A. L. and C. R. S. L.**

---

### FROM THE 250TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-FM-17-006118, THE HONORABLE JESSICA MANGRUM, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Peter Edward Laurie appeals from the trial court's order in suit for modification of a support order. The trial court increased the amounts of Laurie's monthly obligations to pay child support and medical and dental support for his two children. On appeal, Laurie challenges the sufficiency of the evidence to support the trial court's modifications and the trial court's authority to increase his obligation for medical and dental support. He also argues that the trial court abused its discretion when it denied his request for a show-cause order regarding the Office of the Attorney General's compliance with a previous order on arrearage payments. For the following reasons, we affirm the trial court's order.

## BACKGROUND

Brooke Stan and Laurie were married and had two children. In 2018, the trial court signed a final decree of divorce ending their marriage and, in July 2019, an agreed final order in suit to modify the parent-child relationship. Neither party was ordered to pay child

support under the terms of the 2018 final decree, but the July 2019 order required Laurie to pay monthly child support of $500 and medical and dental support of $266.65.

In October 2020, the trial court signed an order confirming support arrearage against Laurie in the amount of $3,351 as of September 30 but releasing a portion of that amount and reducing the judgment to $1,063.80. The court also confirmed that Laurie was in arrears in the amount of $3,803.29 for medical support. Laurie was ordered to make monthly payments of $44 and $26 against the judgment amounts in addition to his monthly child-support obligations until the arrearages were paid in full.

In October 2023, the Office of the Attorney General (OAG) filed suit to modify the July 2019 order and a motion to confirm support arrearage that included a copy of a "Financial Activity Report," which showed the accrual of monthly amounts that Laurie owed in child support and his payments against those amounts from September 30, 2020, through October 17, 2023. *See* Tex. Fam. Code §§ 157.002(b)(3) (authorizing motion for enforcement of child support to include copy of record of child-support payments maintained by Title IV-D registry or local registry), .162(c) (stating that payment record that is attached to motion is admissible to prove arrearage). The OAG sought to modify the amount of medical and dental support because circumstances of the children or a person affected by the July 2019 order had materially and substantially changed or it had been more than three years since the order was rendered and the monthly amount of support differed by either 20 percent or $100 from the amount that would be awarded in accordance with the support guidelines. *See id.* § 156.401 (stating grounds for modification of child support).

A few months after the OAG filed suit, Stan, acting pro se, filed a counter petition for modification of child support and medical and dental support, and Laurie, also acting pro se,

2

answered and counterclaimed for modification of possession to 50/50 and cancellation of his support obligations.[1] Laurie also sought a show-cause order against the OAG concerning how it had applied withheld amounts from his earnings to the amounts of child support and medical and dental support arrearages in the October 2020 judgment.

The final hearing occurred in August 2024. The OAG abandoned its request for judgment on the support arrearages but sought to increase the monthly amount of medical and dental support that Laurie was required to pay, and Stan sought to increase the monthly amount of child support and medical and dental support. The witnesses were Laurie and Stan, and the exhibits included information about the children's health insurance through Stan's employer; bi-monthly statements showing Laurie's earnings in August, September, and October 2023; and a letter from the Department of Veterans Affairs stating that Laurie receives a monthly benefit of $1,827.06. The earnings statements from Laurie's employment reflect that his monthly gross pay was around $9,000. Laurie also submitted an exhibit that listed his monthly expenses, which totaled $8,391.03 and included monthly child support of $836.65.

Stan testified that the current monthly cost through her employer was $361.52 for the children's health insurance and $42.79 for their dental insurance. As to her request to modify the amount of child support, she testified that Laurie's last job when they were married was working as an attorney making $65,000 annually but that he stopped working and returned to school "full time to become a teacher," and that when they decided to divorce, he was in school full time. She further testified that they initially agreed to "50/50 possession" and no child support; that "about a month" after they divorced, Laurie dropped the children and "all their stuff" off with her and did not see them for about one month; and that they "slowly worked

---

[1] Laurie and Stan also are acting pro se on appeal.

[their] way back up to the agreement that was the possession schedule that was written in the 2019 order"—that she would have primary care of the children and Laurie would pay monthly child support of $500.[2]  At the time of their agreement in July 2019, Stan "was under the understanding" that Laurie was in school to become a teacher.  She also testified that he was not working and that when he did return to work, it was as a teacher and that she did not seek modification when he returned to work because child support of $500 was based on the starting salary for a teacher.[3]

Laurie testified that he received a monthly veteran's benefit of $1,827.06 and confirmed his earnings as reflected in the statements from August to October 2023 and his continuous employment at a law firm after that.  He also testified that he has been an attorney since 2003; that he took time off from work to go to school, starting in 2017 and finishing sometime in 2019; that he "had trouble finding a job in 2019 because of COVID and—or 2020 because of COVID," he thought that he "started as a teacher's assistant in like October 2020" and later was employed as a teacher; that he had debts including student loans and a "pretty high" tax bill; and that his monthly earnings at the law firm fluctuate based on how many hours he bills.  He also testified about his monthly expenses.

Following the hearing, the trial court signed the modification order that is the subject of this appeal.  The trial court denied Laurie's application for a show-cause order against the OAG and found that there had been a material and substantial change in the circumstances of the children or parties after the July 2019 order and that it was in the children's best interest to

---

[2]  In the July 2019 order, Laurie's periods of possession were every other weekend and one weekday evening each week.

[3]  The July 2019 order states that child support of $500 "reflect[s] an agreement below guideline child support which is expressly reserved for future determination by the Court."

4

modify Laurie's obligations for child support and medical and dental support. The trial court found that Laurie's gross monthly resources were $10,847.30 and that his net monthly resources were $8,448.40, and based on these findings, ordered Laurie as of January 1, 2024, to make monthly payments of $361.52 for medical support, $42.79 for dental support, and $2,112.10 for child support. The trial court also entered findings of fact and conclusions of law and denied Laurie's request for amended and additional findings of fact and conclusions of law. This appeal followed.

## ANALYSIS

### Standard of Review

"We review the trial court's orders regarding child-support modification for an abuse of discretion." *In re D.H.*, No. 01-19-00268-CV, 2020 Tex. App. LEXIS 5853, at *7 (Tex. App.—Houston [1st Dist.] July 28, 2020, no pet.) (mem. op.) (citing *In re T.D.C.*, 91 S.W.3d 865, 872 (Tex. App.—Fort Worth 2002, pet. denied)); *see Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) ("A court's order of child support will not be disturbed on appeal unless the complaining party can show a clear abuse of discretion."); *Clark v. Binder*, No. 03-22-00631-CV, 2024 Tex. App. LEXIS 3990, at *6 (Tex. App.—Austin June 7, 2024, no pet.) (mem. op.) (same). "A trial court abuses its discretion if it acts arbitrarily or unreasonably or if it does not analyze or apply the law properly." *In re D.H.*, 2020 Tex. App. LEXIS 5853, at *7 (citing *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011)).

"The legal and factual sufficiency of the evidence supporting a modification order are not independent grounds for asserting error but are relevant factors in deciding whether the trial court abused its discretion." *Id.* (citing *T.D.C.*, 91 S.W.3d at 872). "We review the

evidence in the light most favorable to the court's modification ruling and indulge every presumption in the ruling's favor." *Id.* at \*7–8 (citing *In re J.D.D.*, 242 S.W.3d 916, 920 (Tex. App.—Dallas 2008, pet. denied)). "If some probative and substantive evidence supports the ruling, then there is no abuse of discretion." *Id.*

**Child Support**

In his first three issues, Laurie challenges the trial court's modification of the July 2019 order as to the amount of his monthly child-support obligation. Laurie does not challenge the trial court's calculation of the amount of his obligation based on his net resources. *See* Tex. Fam. Code §§ 154.062 (requiring court to calculate net resources for purpose of determining child-support liability and defining resources), .125(b) (stating guideline that support of two children is twenty-five percent of obligor's net resources). Rather, Laurie relies on the parties' agreement in July 2019 that he would pay $500 in child support, *see id.* § 154.124(a) (authorizing parties to enter into agreement containing provisions for child support that vary from child support guidelines), and contends that the trial court erred in modifying child support because (i) there was not sufficient evidence of a material and substantial change in circumstances, (ii) the trial court improperly imposed a financial burden on him exceeding his ability to pay, and (iii) the trial court erred in imposing retroactive child support without considering whether the obligation would impose an undue financial hardship on him. We address each of these arguments in turn.

*Evidence of a Material and Substantial Change in Circumstances*

In his first issue, Laurie argues that the trial court's modification of the July 2019 order was not supported by sufficient evidence of a material and substantial change in

6

circumstances as required under Subsection 156.401(a-1) of the Texas Family Code because the "trial court relied on speculative and vague testimony regarding [his] financial status in 2019, which failed to establish a valid comparison between [his] past and present financial conditions."

Subsection 156.401(a-1) of the Texas Family Code states,

> If the parties agree to an order under which the amount of child support differs from the amount that would be awarded in accordance with the child support guidelines, the court may modify the order only if the circumstances of the child or a person affected by the order have materially and substantially changed since the date of the order's rendition.

*See id.* § 156.401(a-1).[4] Because the July 2019 order was based on the parties' agreement that Laurie's monthly child support obligation would be in an amount that differed from the amount that would be awarded in accordance with the child-support guidelines, under Subsection 156.401(a-1), the trial court could not modify the order without evidence of a material and substantial change in the circumstances of the children or the parties. *Id.*

In determining whether there has been a material and substantial change, a trial court considers the circumstances of the child and the parents at the time of the prior child-support order as compared to the circumstances existing at the time of the trial of the modification suit.[5] *In re Y.E.*, No. 14-20-00608-CV, 2022 Tex. App. LEXIS 916, at *9 (Tex.

---

[4] *Cf.* Tex. Fam. Code § 156.401(a)(2) (except as provided in (a-1), (a-2), or (b), courts may modify order providing child support when "it has been three years since the order was rendered or last modified and the monthly amount of the child support award under the order differs by either 20 percent or $100 from the amount that would be awarded in accordance with the child support guidelines").

[5] A court also may not modify a child support order unless the modification is in the child's best interest. *In re S.C.*, No. 02-17-00377-CV, 2018 Tex. App. LEXIS 8723, at *8 (Tex. App.—Fort Worth Oct. 25, 2018, no pet.) (mem. op.); *see Iliff v. Iliff*, 339 S.W.3d 74, 81 (Tex. 2011) ("[I]n child support decisions, the 'paramount guiding principle' of the trial court should

7

App.—Houston [14th Dist.] Feb. 8, 2022, no pet.) (mem. op.). "A change in a parent's income can constitute a material and substantial change warranting a change in the amount of child support a parent is required to pay." *Id.* (citing *Reagins v. Walker*, 524 S.W.3d 757, 761 (Tex. App.—Houston [14th Dist.] 2017, no pet.)).

As the party seeking to modify the July 2019 order, Stan had "the burden to prove by a preponderance of the evidence that a material and substantial change in circumstances [had] occurred." *See In re T.A.W.*, No. 02-09-00309-CV, 2010 Tex. App. LEXIS 9386, at *8–9 (Tex. App.—Fort Worth Nov. 24, 2010, no pet.) (mem. op.). Because she was seeking modification of Laurie's child-support obligations based on his current income, Stan's burden was to present both "historical and current evidence" of his financial circumstances. *Mustafa v. Asim*, No. 03-23-00018-CV, 2024 Tex. App. LEXIS 8840, at *33 (Tex. App.—Austin Dec. 20, 2024, no pet.) (mem. op.); *see In re C.C.J.*, 244 S.W.3d 911, 917–18 (Tex. App.—Dallas 2008, no pet.) (requiring "historical and current evidence of the relevant person's financial circumstances" and explaining that "[w]ithout both sets of data, the court has nothing to compare and cannot determine whether a material and substantial change has occurred").

Laurie does not challenge the trial court's findings of fact as to his financial circumstances at the time of the August 2024 hearing—that his average gross monthly income through employment was $9,020.24 and his adjusted net monthly income was $8,448.40—or contend that the trial court incorrectly calculated the amount of monthly child support—$2,112.20—based on the child-support guidelines. He also does not challenge the trial court's

always be the best interest of the child."). Laurie has not asserted a challenge to the trial court's best interest findings in his issues on appeal.

8

finding that he began working for the law firm in 2023.[6]  His challenge is to the evidence supporting the trial court's findings as to his financial circumstances at the time of the July 2019 order.  The trial court's findings of fact as to that order included:

> 15.  At the time of the 2019 Order, Peter Edward Laurie was not employed full time as an attorney.
>
> 16.  At the time of the 2019 Order, Peter Edward Laurie was enrolled in graduate school seeking a teaching certificate or searching for employment as a teacher.  Subsequently, Peter Edward Laurie worked as a teacher's assistant and as a teacher.

Laurie argues that the only evidence of his education and employment in 2019 was Stan's testimony; that she lacked the personal knowledge necessary to testify about his financial circumstances in July 2019, making her testimony inadmissible; and that the trial court should have sustained his objections to her testimony because it was speculative, unreliable, vague, and lacked foundation regarding his financial circumstances in 2019 and, thus, "failed to establish a valid comparison between [his] past and present financial conditions."  As support, he cites to Texas Rule of Evidence 602, which requires witnesses to have personal knowledge of a matter before they may testify about the matter.  *See* Tex. R. Evid. 602.

"We review a trial court's decision to admit or exclude evidence for an abuse of discretion."  *A.B. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-17-00658-CV, 2018 Tex. App. LEXIS 1790, at *7 (Tex. App.—Austin Mar. 9, 2018, no pet.) (mem. op.) (quoting *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005)).  "A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner 'without reference to any guiding rules and principles.'"  *Id.* (quoting *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)).

---

[6] In his affidavit in support of his request for a show-cause order against the OAG, Laurie avers that he changed jobs in April 2023 and started getting paid bimonthly.

9

Stan testified that when they were married, Laurie worked as an attorney[7] making $65,000 annually but that he stopped working and returned to school full time to become a teacher; that he "got his master's in education and teaching certificate"; and that when they decided to divorce in September 2017, "he was in school full time." She testified that she "always made slightly more than him" so she agreed to pay for after-school care but that otherwise they agreed they would each pay for the children's expenses during their periods of possession, neither of them would pay child support, and possession would be "50/50." She further testified that the final divorce was in July 2018, and shortly after that, the children lived with her.

Laurie objected to Stan's testimony about Laurie's employment and financial circumstances in 2019 as follows:

Stan:             . . . You know, [after the divorce], I had the kids all the time. I paid for everything and we—you know, without any sort of order for him to provide support. In the beginning of 2019, Mr. Laurie—I have to admit, I'm unsure if he was still in school or if he had finished school—

Laurie:       Objection, foundation, speculative.

The Court:   Overruled.

Stan:             —but he told me that he planned to apply to schools out of state to get his PhD, and at that time I decided I needed to hire a lawyer to modify our agreement. . . . I hired a lawyer. We filed a petition requesting that he pay a thousand dollars a month in child support. We derived at that number because, based on his income of $65,000 under the statutory guidelines, that is what approximately he [was] required to pay at that time for two children.

The plan was, if we were to proceed to trial, that we would put on a trial regarding his imputed income. I was under the understanding, you know, he was going back to school presumably to become a middle or high school teacher. So, that

---

[7] Laurie raised a relevancy objection to Stan's testimony that Laurie worked as an attorney when they were married, but the trial court overruled this objection, and Laurie does not challenge this ruling on appeal.

10

imputed income would be based on either his salary as an attorney or his salary as a teacher. The AISD pay scales are publicly available. I looked at them at the time, and, you know, it was approximately $500 a month based on what a starting salary would be for a teacher at that time—

Laurie:          Objection, lacks foundation.

Stan:            —with somebody with a master's degree.

Laurie:          Objection, lacks foundation.

Trial Court:    Overruled.

Stan:            So at the time I, you know, was barely making ends meet. I was having to pay this lawyer to go to trial when at the time I also knew he wasn't working; either he was in school—

Laurie:          Objection, lacks foundation.

Trial Court:    Overruled.

Stan:            So, you know, I discussed it with my attorney. [Laurie] was willing to pay $500. And so, to avoid the cost of a trial, which—because we were having to prove imputed income, I thought would be expensive and the fact that I didn't think he would actually pay the child support, financially, I just couldn't afford it. So, I agreed to the $500 at that time. But, again, I—you know, it was based on what we thought we could prove the imputed income would be during a trial.

Now you know, here we are. It's been more than three years. I'm seeking to modify the child support so it is in accordance with statutory guidelines to—with regard to his current income.

We cannot conclude that the trial court abused its discretion in overruling Laurie's objections to this testimony. The trial court reasonably could have determined that Stan's testimony about Laurie's financial circumstances in 2019 was not based on speculation or lacking in foundation but that it was within her personal knowledge, which included Laurie's statements to her at the time. *See* Tex. R. Evid. 602 ("Evidence to prove personal knowledge may consist of the witness's own testimony.).

11

Laurie also argues that: (i) even if Stan's testimony was properly admitted, it does not support the trial court's findings about his financial circumstances because the record "lacks financial documentation, employment records, or credible testimony establishing [his] circumstances at the time of the 2019 order," and evidence of "actual income" or "concrete financial data" is required; (ii) the trial court's finding that circumstances had changed was "fatally vague because it fails to specify whose circumstances changed"; (iii) there was no evidence that he was not working full-time as an attorney in 2019, that he was enrolled in graduate school seeking a teacher certificate, or that he was searching for employment as a teacher; and (iv) this Court cannot presume "the missing findings supporting the judgment" because the trial court denied his request to make additional findings as to his financial status at the time of the July 2019 order, such as his net income and resources at the time.

The trial court, however, was not required to make additional findings of fact unless they had some significance to an ultimate issue in the case. *See In re Y.E.*, 2022 Tex. App. LEXIS 916, at *15. Laurie has not cited, and we have not found, authority that would require findings or evidence in the form of financial documents of his net income and resources in July 2019 before the trial court could make a finding of changed circumstances or that the trial court was required to identify in the modification order that it was Laurie's circumstances that had changed. *See* Tex. Fam. Code § 156.401 (stating required findings for modifying child support order); *In re C.C.J.*, 244 S.W.3d at 919 ("A trial court's determination of changed circumstances is not guided by rigid rules, but is fact-specific.").

Further, because Stan's testimony, including that in 2019, Laurie was not working and was in school to become a teacher, was consistent with her agreement in July 2019 to accept $500 in child support, the trial court reasonably could have found credible Stan's testimony

12

about the change in Laurie's financial circumstances after the 2019 order. *See In re I.Z.K.*, No. 04-16-00830-CV, 2018 Tex. App. LEXIS 1694, at \*8 (Tex. App.—San Antonio Mar. 7, 2018, no pet.) (mem. op.) ("As the trier of fact, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony."). Laurie also testified about his circumstances that overlapped with the time of the 2019 order. When asked when he went back to school to earn his master's in education and teaching certificate, Laurie testified that he thought that he started in 2017, that he did not remember when he graduated, that he thought it was in the spring semester of 2019, that he "had trouble finding a job in 2019 because of COVID and—or 2020 because of COVID," that he had student loans, and that he thought that he started as a teacher's assistant in "like October 2020" and later was employed as a teacher.[8] Although he denied that his only two forms of employment after 2019 had been teacher and lawyer and testified that he did not remember or recall if he was employed full time in the summer of 2019 or if he was looking for employment, the trial court could have found his testimony not credible. *See id.*

Crediting the evidence that Laurie had recently completed school and was unemployed at the time of the July 2019 order, that he was hired as a teacher's assistant in October 2020 and then as a teacher, that child support would have been approximately $500 based on a starting teacher's salary under the guidelines at that time, and that he was currently employed at the law firm making approximately $9,000 per month, we conclude that there was some evidence that there had been a material and substantial change in Laurie's

---

[8] In its answer to Laurie's order for show cause, the OAG recites that as of October 8, 2020, Laurie's current employer was Texas State University and that in December 2020, the OAG received a "new hire hit" that Laurie's new employer was Austin ISD.

13

income warranting a change in the amount of child support that he was required to pay. *See In re Y.E.*, 2022 Tex. App. LEXIS 916, at \*9. We overrule Laurie's first issue.

*Ability to Pay*

In his second issue, Laurie argues that the trial court's modification of his support obligations "imposed financial hardship on [him] by creating obligations that exceeded [his] ability to pay" and that the "new support order conflicted with Texas case law prohibiting child support orders from rendering an obligor unable to meet basic living expenses by creating a monthly deficit of over $2,100."

Laurie relies on his testimony and exhibit that listed and totaled his monthly expenses. The exhibit shows that his monthly expenses totaled $8,391.03, and he testified about his monthly expenses in relevant part as follows:

> [A]s a result of COVID and other issues, I was not able to pay rent for a while. I incurred a lot of debt, and I have a tax bill that's pretty high. And what I've shown to the Court here is a breakdown of my monthly expenses.
>
> It shows rent of 2159. My renter's insurance is 25. I pay 531 in credit card debt a month. Student loans are 367. My tax bill to the IRS is 400. I have a 440 car payment. My car insurance I am working on to get—getting that down, but as of yesterday . . . it was 519. . . . For commute, my gas is about 220. My health insurance is 221. Utilities cost 340, and I know that looks high. But, again, I wasn't able to pay Austin Electric for about a year and a half. So, there's an arrearage there.
>
> Clothing 150. I have to—I'm a lawyer. So, I have to get some stuff dry cleaned. Entertainment 200. These are just based on averages for someone my age living in Austin.
>
> Groceries are 700 for the kids and things like that. Medical, such as—like copays and doctor visits are about 300. Personal, that includes haircuts and things like that, 75. I give 75 to charity.
>
> JCC membership [$180] is the Jewish Community Center. Dining; I have to go out sometimes is 300. And I try to save a little bit every month, and then, you'll

see the child support amount that I currently owe as 836. So, that shows what my expenses are, is about $8,391.

Laurie, however, does not challenge the trial court's findings as to his current income or its calculation of his monthly child-support obligation based on his current income and the child support guidelines for two children. *See* Tex. Fam. Code § 154.121 (explaining that "child support guidelines in this subchapter are intended to guide the court in determining an equitable amount of child support"); *see also id.* §§ 154.062 (addressing calculation of net resources), .125(b) (stating when trial court "shall presumptively apply" schedule of child-support guidelines based on obligor's monthly net resources and number of children). The amount of child support established by the child-support guidelines is presumed to be reasonable, and an order of support conforming to the guidelines is presumed to be in the best interest of the child. *Id.* § 154.122(a). Guided by these statutory provisions and on this record, we cannot conclude that the trial court abused its discretion by ordering Laurie to pay twenty-five percent of his net resources for his two children. *See In re D.H.*, 2020 Tex. App. LEXIS 5853, at *7 (explaining when trial court abuses its discretion).

As support for his position that the trial court abused its discretion in the amount of child support ordered because of the evidence of his monthly expenses, Laurie cites *McCartor v. Parr*, 612 S.W.2d 268 (Tex. App.—Amarillo 1981, no writ), but that case does not help him. In that case, the court states that "[a]s a general rule, the court abuses its discretion in ordering the payment of more child support than the parent reasonably can afford." *Id.* at 269. The court's analysis, however, turned on the father's lack of income, not his expenses. *Id.* at 269–70 (concluding that "excess sums ordered to be paid [in child support] rest only in speculation and

15

surmise that [father] has the potential to secure employment and earn those sums"). Here, Laurie does not dispute his employment as an attorney and his monthly income from that employment.

Laurie also relies on *Kominczak v. Kominczak*, 474 S.W.2d 749 (Tex. App.—Houston [1st Dist.] 1971, no writ), but the analysis in that case is consistent with our analysis here. In that case, our sister court concluded that the trial court abused its discretion in refusing to reduce child support, explaining that "support payments must be made to correspond to [the father's] financial ability" and that the father "must be permitted to retain enough of his earnings to pay the necessary expenses of living and earning a living." *Id.* at 750. The court's focus in that case was on the father's significant reduction in income that was "an already modest income," and as to the father's expenses, the court recognized the evidence of the father's monthly expenses and that the "trial court may well have determined that the total could be reduced." *Id.* Consistent with this reasoning, here the trial court reasonably could have found that some of Laurie's listed expenses were not "the necessary expenses of living and earning a living." *See id.*; *see also generally* Tex. Fam. Code § 154.123(b) (listing types of evidence for courts to consider in determining whether application of guidelines would be unjust or inappropriate under circumstances such as "special or extraordinary educational, health care, or other expenses of the parties or of the child").

For these reasons, we overrule Laurie's second issue.[9]

_____

[9] Laurie also relies on *Ex parte Gonzales*, 414 S.W.2d 656 (Tex. 1967), to argue that his testimony about his financial condition cannot be disregarded, but his reliance on that case is misplaced. In that original proceeding, the court granted habeas relief because the evidence established relator's "involuntary inability to comply with the court's order requiring the relator to make child support payments." *Id.* at 656. In a sworn application for discharge from imprisonment for civil contempt, relator swore that he was unable to pay the child support because he was unemployed and had no money and because he had a second family consisting of a wife and seven children; he testified before the trial court that he had no money to pay the child

16

*Retroactive Child Support*

In his third issue, Laurie argues that the "trial court erred by imposing retroactive child support without considering whether it would create undue financial hardship, as required under Tex. Fam. Code § 154.131(b)(3)."[10] The trial court, however, did not award retroactive child support pursuant to that provision. *See In re Valdez*, 980 S.W.2d 910, 913 (Tex. App.—Corpus Christi–Edinburg 1998, pet. denied) (describing difference between retroactive child support, which is "repayment of monies expended for the care of the child in the past," and child support, which ordinarily is to be paid in future for raising child and taking care of child's needs); *see also* Tex. Fam. Code § 154.009 (stating when retroactive child support may be ordered); *In re C.J.C.,* No. 13-15-00415-CV, 2016 Tex. App. LEXIS 13531, at *1–4 (Tex. App.—Corpus Christi–Edinburg Dec. 21, 2016, no writ) (mem. op.) (addressing ordered retroactive child support that was payable in installments when paternity testing in 2014 had established that appellant was child's father and mother sought retroactive child support from 1997, when child was born, to 2014).

Relevant here, "a support order may be modified with regard to the amount of support ordered only as to obligations accruing after the earlier of: (1) the date of service of citation; or (2) an appearance in the suit to modify." Tex. Fam. Code § 156.401(b). Laurie filed his answer to the OAG's suit for modification of support in November 2023; Stan filed her

---

support that was owed; and his testimony was not contradicted. *Id.* at 656–57. In this context, the Texas Supreme Court discharged relator because he did not have the means "to purge himself of contempt." *Id.* at 657.

[10] Subsection 154.131(b)(3) of the Texas Family Code requires the trial court when ordering retroactive child support to consider "the net resources of the obligor during the relevant time period and whether . . . the order of retroactive child support will impose an undue financial hardship on the obligor or the obligor's family." Tex. Fam. Code § 154.131(b)(3).

17

counter-petition for modification of Laurie's support obligations on January 2, 2024; the trial court ordered the modified support obligations beginning on January 1, 2024; and the trial court's conclusions of law included that it was in the children's best interest that "the modification of child support, medical support, and dental support be made retroactive to the earliest possible date after service and appearance of the parties in the modification suit." *See id.* We overrule Laurie's third issue.

**Medical and Dental Support**

In his fourth issue, Laurie argues that the trial court lacked statutory authority to increase his medical and dental support obligations under Subsection 156.401(a-1) of the Texas Family Code because it refers exclusively to child support and does not extend to medical or dental support. He appears to be arguing that because the July 2019 order was agreed as to amounts of his obligations for health and dental care support, those amounts cannot be modified in a subsequent order.

Subsection 156.401(a), however, defines an "order that provides for the support of a child" as "including an order for health care coverage under Section 154.182 or an order for dental care coverage under Section 154.1825." *Id.* § 156.401(a); *see also id.* §§ 154.182 (addressing health care coverage for child), .1825 (addressing dental-care coverage for child), .183(a)(2) (providing that amount that obligor is ordered to pay as medical or dental support for child under chapter is "child support obligation"). And that subsection expressly allows for the modification of the amount of support for medical and dental care coverage when there has been a material and substantial change in circumstances. *Id.* § 156.401(a)(1); *see In re C.J.N.-S.*, 540 S.W.3d 589, 591 (Tex. 2018) (per curiam) ("When interpreting statutes, courts presume the

18

Legislature's intent is reflected in the words of the statute and give those words their fair meaning." (citing *Sommers v. Sandcastle Homes, Inc.*, 521 S.W.3d 749, 754 (Tex. 2017))).

Given our conclusions above that there was some evidence of a material and substantial change in circumstances to support modification of the July 2019 order, we cannot conclude that the trial court abused its discretion by modifying Laurie's obligations for medical and dental support to reflect the current costs of the children's health and dental insurance through Stan's employer. *See* Tex. Fam. Code § 156.401(a). We overrule Laurie's fourth issue.

**Show-Cause Order**

In his fifth issue, Laurie argues that the trial court improperly denied his request for a show-cause order against the OAG to comply with the October 2020 order governing arrearage payments. In its conclusions of law, the trial court concluded that Laurie "failed to prove that OAG's actions were unauthorized by Chapter 158 of the Texas Family Code, which grants OAG broad statutory authority to initiate administrative income withholding, enforce existing orders, and adjust the amount to be withheld for arrearages."

In the October 2020 order, the trial court found and confirmed that as of September 30, 2020, after amounts were released, Laurie was in arrears on child support in the amount of $1,063.80 and medical support in the amount of $3,803.29; rendered child and medical support judgments in those amounts; ordered him, beginning on October 1, 2020, to pay $44 monthly against the child-support judgment and $26 against the medical-support judgment in addition to his monthly obligations for child and medical support; and authorized income withholding for the amounts set out in the order. The record also includes the Financial Activity Report, showing the accrual and collection of amounts owed by Laurie as of October 18, 2023.

Laurie contends that the OAG failed to apply the withheld amounts from his earnings as directed in the October 2020 order by reallocating funds improperly and extending his repayment period, that the trial court's refusal to issue a show-cause order "allowed these violations to persist," and that the Texas Family Code does not grant the OAG the authority to adjust how court-ordered monthly payments are applied to arrearages. Laurie further argues that: (i) by failing to apply the withheld amounts as ordered, the OAG has effectively modified the order without court approval, which is outside its authority, (ii) the October 2020 order "left no room for discretion," and (iii) the OAG was not authorized to "unilaterally reallocate[] funds by diverting child support arrearage payments toward other balances." He contends that he has overpaid $2,068 since March 2021, or that if an extra $1,350.93 had not been withheld from his wages by March 2021, his arrearage would have been discharged 25 months ago. Laurie also complains about the balance of $17.13 that has stayed on his account for several years, relies on the intent of Subsection 158.003(b) of the Texas Family Code to have arrearages paid off in the least amount of time, and argues that the statute "does not allow for arrearages to linger indefinitely over trivial balances." *See id.* § 158.003(b) (providing that additional amount to be withheld for arrearages shall be in amount that is sufficient to discharge arrearages in not more than two years or additional 20 percent added to current monthly support order, "whichever amount will result in the arrearages being discharged in the least amount of time").

Laurie, however, has not shown that the OAG acted outside its express statutory authority. Without obtaining an order from a judicial tribunal, a Title IV-D agency may order income withholding and issue an administrative writ of withholding. *See id.* § 231.002(e); *see also id.* § 231.001 (designating OAG as State's Title IV-D agency). The OAG also may adjust administrative writs of withholding without a hearing and administratively withhold earnings to

20

collect accrued interest. *See id.* § 158.502(b); *see also id.* § 157.265 (providing for accrual of interest on delinquent child support that is greater than amount of monthly periodic support obligation). Under Subsection 158.003(a), "[i]n addition to income withheld for the current support of a child, income shall be withheld from the disposable earnings of the obligor to be applied toward the liquidation of any child support arrearages, including accrued interest as provided in Chapter 157." *Id.* § 158.003(a).

And Section 157.268 provides the order of priority for applying collected child support:

(1) current child support;

(2) non-delinquent child support owed;

(3) the principal amount of child support that has not been confirmed and reduced to money judgment;

(4) the principal amount of child support that has been confirmed and reduced to money judgment;

(5) interest on the principal amounts specified in Subdivisions (3) and (4); . . .

*Id.* § 157.268.

Referencing this statutory provision's order of priorities, the OAG explained in its answer to Laurie's application for a show-cause order how the amounts withheld from his earnings were applied to his current support obligations and arrearages, including explaining that the balance of $17.13 would not be reached until the principal of the medical-support judgment has been paid in full. *See id.* Laurie does not dispute that the Financial Activity Report accurately reflects the collected amounts from him, and he did not offer evidence to controvert the contents of this record. *See id.* § 157.162(c) (stating that payment record is admissible to

21

prove dates and amounts of payments, amount of accrued interest, cumulative arrearage over time, and cumulative arrearage as of final date of record), (c-1) (stating that respondent may offer evidence controverting contents of payment record). Thus, we conclude that the trial court did not improperly deny Laurie's request for a show-cause order against the OAG. We overrule his fifth issue.

## CONCLUSION

Having overruled Laurie's issues, we affirm the trial court's order.

_____

Rosa Lopez Theofanis, Justice

Before Chief Justice Byrne, Justices Triana and Theofanis

Affirmed

Filed: May 2, 2025